LIEGH  M.  SOUTHERLAND  *vs.*  JULIAN  E.  NORRIS,
Officer  of  Registration  of  the  First  Election  District,
and  J.  SAMUEL  TURNER,  Clerk  of  the  Circuit  Court
for  Charles  County.

*Officer  of  Registration—Residence  of  Voter—Proof  of  Res-
idence—Constitutional  law.*

Section-1 of Article 1 of the Constitution provides that a voter
shall be a citizen of the United States of the age of twenty-one
years or upwards, and shall have been a resident of the State
for one year, and of the county in which he offers to vote, for
six months, next preceding the election, and must be duly regis-
tered.   Section 14 of the Act of 1890, ch. 573, provides that all
persons whose names were on the registration lists at the date of
the passage of the Act, but who had previously removed from
the State, and had taken up a domicile, beyond the limits of the
State, shall be presumed to have thereby intended to abandon
their legal residence in the State, unless within thirty days after
the passage of the Act, they shall go in person before the clerk
of the Circuit Court for the county from which they shall have
so removed, and make and acknowledge an affidavit that when
they so removed they did not intend to change their legal resi-
dence within the State, but that they intend to return to the
State, and take up their actual domicile therein, on or before
six months next preceding the Tuesday after the first Monday
of November, 1890.   HELD:

That the officer of registration is justified in striking from the
registration list the name of a voter who fails to make the affi-
davit prescribed by the statute, although he left the State prior
to its passage.

The Act does not add to the qualifications of a voter as prescribed
by the Constitution, but simply provides a rule of evidence for
the proof of a legal residence; and this the Legislature had the
right to do.

A person who left the State before the Act went into effect, is not
entitled to prove his residence by the rules of evidence in force

when he left the State, but is required to prove it by those in force when the officer of registration sits to revise the registry lists.

A person who leaves the State, and takes up a domicile elsewhere, is not exempted, because of his being an employé of the Federal Government, from the operation of the rule of evidence prescribed by the Act of 1890, as it applies to all persons who depart from the State and acquire a residence beyond its limits.

APPEAL from the Circuit Court for Charles County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, BRYAN, McSHERRY, and BRISCOE, J.

· *A. Posey*, and *Frederick Stone*, for the appellant.

*F. M. Cox*, and *John Prentiss Poe*, for the appellees.

McSHERRY, J., delivered the opinion of the Court.

George E. B. Key was born in Charles County, and resided there continuously until the summer, or fall of eighteen hundred and eighty-nine, when, having been employed as a laborer in the Navy Yard at Washington, he removed to the District of Columbia, and shortly thereafter took his family to reside with him in that place. He rented a house in Washington, and gave up the one he had occupied in Charles County. He has remained in the employ of the United States' Government nearly ever since, and during that period he returned to Charles County only to make some brief visits. When he left the county his name appeared upon the registration books of the first election district as a qualified voter, but during the sitting of October, 1890, the officer of registration struck his name from the registry lists, and thereupon the appellant, alleging that he,

Southerland, felt himself aggrieved by this action of the officer of registration, took an appeal to the Circuit Court for Charles County for the purpose of having Key's name restored to the lists. The petition was dismissed, and from that ruling of the Court this appeal has been taken.

The qualifications of a voter in this State are prescribed by the first section of Article one of the Constitution of Maryland. Those qualifications are that he shall be a citizen of the United States of the age of twenty-one years or upwards, and that he shall have been a resident of the State for one year, and of the Legislative District of Baltimore City, or of the county in which he offers to vote, for six months next preceding the election at which he offers to vote. Before he can exercise his right to vote he must be duly registered. These qualifications, fixed by the organic law, can neither be enlarged nor curtailed by the General Assembly; but there is no provision of the Constitution, as there is no principle of constitutional law, that denies to the Legislature the power to enact rules of evidence by which the facts establishing the right to vote may be proved. The Constitution itself merely designates the qualifications, and then leaves the Legislature free to declare by what evidence those qualifications must be shown to exist. It is perfectly competent to the Legislature to say what shall and what shall not be admissible evidence to prove a particular fact; and this it has repeatedly done. Its power to change an established rule of evidence is equally undoubted; and the adoption by it of a new rule whereby the proof of a fact is rendered more difficult than it had been before, invades, on that account, no vested right whatever. The right to have one's controversies determined by existing rules of evidence is not a vested right. These rules, like others affecting remedies, must at all times be subject to modification and control by the Leg-

islature. *Gibbs vs. Gale*, 7 *Md.*, 76; *Ogden vs. Saunders*, 12 *Wheat.*, 349; *Webb, et al. vs. Den*, 17 *How.*, 576. But the General Assembly has no power to establish rules which, under pretence of regulating the presentation of evidence, go so far as altogether to preclude a party from exhibiting his rights. *Cooley Con. Lim.*, 453. These general principles are applicable when the matter to be proved is the voter's qualification, and the *forum* is the limited one of an officer of registration, no less than when a disputed right is investigated in a judicial tribunal possessing original jurisdiction.

The legal residence of Key is the controverted question in the case at bar, and was the question before the officer of registration. Now, what evidence has the General Assembly declared shall alone be competent, both before the officer of registration and in the Courts upon appeal from him, to prove residence in cases where the voter had left the State before the passage of the *Act of* 1890, *ch.* 573? Prior to the adoption of that Act there was no rule of evidence prescribed by the Legislature on this subject, and in dealing with such questions resort was of necessity had by the Courts to general principles and analogies. By *sec.* 14, of the *Act of* 1890, *ch.* 573, it is provided, in substance, that all persons whose names were upon the registration lists at the date of the passage of the Act, but who had previously removed from the State and had taken up a domicile, dwelling-place, abode or habitation beyond the limits of Maryland, shall be presumed to have thereby intended to abandon their legal residence in this State, unless within thirty days after the passage of the Act they shall go in person before the clerk of the Circuit Court for the county from which they shall have so removed, or before the clerk of the Superior Court of Baltimore City, if their removal shall have been from said city, and make and acknowledge before such clerk an affidavit that when

they so removed, they did not intend to change their
legal residence within the State, but that they intend
to return to this State, and to take up their actual dom-
icile and habitation therein, on or before six months
next preceding the Tuesday after the first Monday of
November, 1890.   In addition to making the oath, the
persons were required to return to the State conformably
to the intention expressed in the affidavit.   A failure to
make the oath and to observe it, was declared to be a
conclusive presumption of an abandonment of residence
in Maryland.   By *sec.* 39 *B*, it is enacted that upon
appeal from an officer of registration no declarations,
statements or admissions of a person seeking registra-
tion shall be admissible in evidence to prove with what
intention he came to, remained in, or departed from any
place of abode.   Key did not make the affidavit pre-
scribed by the statute, nor did he return to Charles
County six months next before the election held in
November, 1890.   Confessedly, therefore, he has not done
the things which the statute required him to do to prove
his right to vote.   But it is insisted that he is still enti-
tled to vote, because (first) *sec.* 14, to which we have
just referred, is unconstitutional; and (secondly) because,
if it be not unconstitutional, it has no application to him
by reason of his being in the employ of the Federal Gov-
ernment.

It is argued that the section is unconstitutional in con-
sequence of its requiring him and others similarly situated,
to possess qualifications in addition to and beyond those
prescribed by the Constitution; and further, because Key
having departed from the State prior to the passage of
the Act, its provisions cannot alter or change his right to
vote, or to register, or to have his name remain on the regis-
tration list, as that right existed and was recognized by
the law in force at the date of his removal to the District
of Columbia.   The section in question does not purport

to, and does not in fact, add anything to the qualifications of age and residence as they are fixed in the constitution. It deals exclusively with the *evidence* by which one of those qualifications—that of residence—shall be proved, just as it might have done with regard to the proof of age. Whether a person is entitled to vote in a particular place where he is not actually domiciled is a question depending, to some extent, upon his *intention* to make that place his legal residence; and the Act of Assembly, whilst superadding no qualification of any kind, simply makes provision for proving in a definite and particular way what that *intention* is. Before the section was enacted, a mere removal by a voter from the State, if that removal was in pursuance of a fixed intention to return, did not deprive him of his right to vote in Maryland. *Ringgold vs. Barley,* 5 *Md.,* 186. This is the law to-day. Before the *Act of* 1890, *ch.* 573, a removal from the State accompanied by no circumstances to indicate an intention to return, furnished some evidence of an intention to acquire a new residence elsewhere, upon the principle that the place where a person lives is taken to be his domicile until facts adduced established the contrary. *Anderson, Adm'r vs. Watt, Ex.,* 138 *U. S.,* 694; *Mitchell vs. United States,* 88 *U. S.,* 350. Since that Act, such a removal, together with the acquisition of a new domicile, is given more weight as evidence of an intention to abandon the State,—its probative force is strengthened. It now raises a presumption that the removal was made with an intention of being permanent, unless the person who has so removed rebuts that presumption by making, within a designated time, the affidavit prescribed by the statute, and by subsequently returning to the State. The section, therefore, merely changes the old rule of evidence, and substitutes a new and uniform one in its stead. It adds no qualification, but simply provides a rule of evidence for the proof of a legal residence. And this

the Legislature had the undoubted right to do notwithstanding Key had left the State before the statute was passed.    When he left, his name could have been stricken from the registry lists though the Act of 1890 had never been passed, if his removal had been accompanied by circumstances indicating a purpose or intention on his part to abandon the State.    But when he left, with the rules of evidence thus defined, he did not take with him a vested right that those rules should not be changed.    He had no guarantee under the Constitution or laws that the Legislature could not, if in its wisdom expedient, give to that removal a greater value as evidence of intention than it formerly possessed, provided the Legislature did not thereby altogether preclude him from exercising his right to vote.    And this, it is perfectly apparent, has not been done.    In other words, his right to vote in the election of 1890 depended on his right to have his name appear on the registration lists as the name of a qualified voter; his right to have his name so appear at that time depended on his being then a resident of the State and of Charles County; and the mode of proving that residence depended, not on the rules of evidence in force when he left the State, but upon those in force when the officer of registration sat in October 1890, to revise the registry lists.    The rules of evidence in force at the time a controverted question is to be decided or determined, and not those which obtained when that question or controversy arose, are the rules which must govern and control the admissibility and effect of evidence applicable thereto. For instance, a statute which removed the disqualification of interest, and allowed parties in suits to testify, may lawfully apply to existing causes of action.    *Rich vs. Flanders*, 39 *N. H.*, 304; *Southwick vs. Southwick*, 49 *N. Y.*, 510.    So may a statute which modifies the common law rule excluding parol evidence to vary the terms of a written contract.    *Gibbs vs. Gale, supra.*  Indeed the

Legislature "may prescribe the number of witnesses which shall be necessary to establish a fact in Court, and may again at pleasure modify or repeal such law, and so they may prescribe what shall be and what shall not be evidence of a fact, whether it be in writing or oral; and it makes no difference whether it be in reference to contracts existing at the time or prospectively." *Fales vs. Wadsworth,* 23 *Me.,* 553. And as observed in *Ogden vs. Saunders, supra,* the Legislature may prescribe the evidence which may be received, and declare the *effect* of that evidence.

The establishment of this new rule of evidence, consequently violated no vested right of Key or of other persons similarly situated. The requirement that the affidavit shall be made within a limited time is not an unreasonable condition—certainly not so unreasonable as to render the statute in this particular either oppressive or invalid.

There is nothing in the letter or the spirit of the statute to justify the conclusion that its terms do not apply to employees of the Federal Government. Because an individual who leaves the State, and takes up a domicile elsewhere, happens to be in the service of the General Government, he is not exempted from the operation of a rule of evidence which upon its face applies to *all* persons who depart from the State and acquire a residence beyond its limits. We have no authority to import into the statute an exception which we do not find there,—to write into it by judicial construction, a qualification of its meaning, and a restriction of its scope, when nothing contained in the body of the Act will justify it. The language is plain and unambiguous, and does not admit of the construction contended for. A clause exempting officers of the General Government from the operation of this section was incorporated in the bill before the Senate of Maryland, but was stricken out by that branch of the Legislature. We

know of no principle which will authorize this Court to restore it.

We think the Court was right in rejecting the prayers of the appellant, and in dismissing his petition, and its judgment will therefore be affirmed.

*Judgment affirmed.*

