# WILLIAM H. POPE *vs.* JOHN M. C. WILLIAMS ET. AL., BOARD OF REGISTRY, ETC.*

*Constitutional Law—Elections and Voters—Validity of Statute Making a Formal Declaration of Intent to Become a Resident of this State the Only Evidence of Such Intent by a New Comer in Order to be Registered as a Voter—Privileges and Immunities of Citizens of the United States.*

The Act of 1902, ch. 133, sec. 25B, provides that all persons coming into this State from any other State or Territory of the United States shall indicate their intent to become citizens of this State by registering their names, together with a declaration of such intention, with the Clerk of the Court of the county, etc., into which they shall remove, and that no person so coming into the State shall be entitled to registration as a voter until one year after his intent to become a voter shall have been declared before the Clerk of Court, and that such entry or a copy thereof shall be the only competent evidence of such intent. Constitution, Art. 1, sec 1, declares that every male citizen of the United States of the age of twenty-one years and upwards who has been a resident of the State for one year and of the legislative district in which he may offer to vote for six months preceding an election shall be entitled to vote, and section 5 of said Article 1, directs that qualified voters shall be registered under laws to be enacted. *Held,* that in order to acquire a residence in this State, a citizen of another State must actually remove into this State and must also have the intention of remaining here; that the object of the Act of 1902 is to prescribe the rule of evidence by which the intent to become a resident of this State shall be established, namely, by the declaration of such intent before a Clerk of Court; that the statute does not impose any unreasonable burden or any other qualification for voting than that declared in the Constitution, and that consequently, the same being a valid exercise of the legislative power to establish a rule of evidence, the petitioner in this case, who moved into the State after the passage of the Act and resided here for more than a year before the time when he applied to be registered but had failed to make a declaration before the Clerk of Court of his intention to become a citizen, is not entitled to be registered as a voter.

*Held,* further, that the said Act is not in violation of the Fourteenth Amendment of the Constitution of the United States, since that Amendment does not make the right of suffrage one of the privileges and immunities of citizenship, nor deny to a State the power to prescribe the terms and conditions upon which its citizens may vote.

*Affi med on writ of error in *Pope* v. *Williams,* 193 U. S. 621.

Appeal from the Circuit Court for Montgomery County (HENDERSON, J.)

The cause was argued before FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Wm. H. Pope*, appellant, *in propria persona.*

In Maryland the electoral franchise is conferred by the Constitution of the State upon male citizens of Maryland over the age of twenty-one years, who, among other things, have been such citizens for one year. But the right, privilege, and *status* of citizen of Maryland depends upon and must be determined with reference to the Constitution of the United States, and any attempt by the Legislature of the State— either in the form of registration laws or under the guise of establishing rules of evidence or proof—to take away, impair or destroy such constitutional *status*, contravences Article 6, section 2, of the Constitution of the United States, which reads as follows: "This Constitution and the laws of the United States which shall be made in pursuance thereof and all treaties which shall be made under the authority of the United States shall be the supreme law of the land, and the Judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." The obligation imposed on persons removing into the State of Maryland after March 29th, 1902, to make the declaration of intention provided for in section 25B of Article 33 of the Code, is a clear attempt to impair the right of citizenship conferred by the Constitution of the United States, and is, in consequence, repugnant to that instrument and void.

It is provided in section 1 of Article 1 of the Constitution of Maryland that "every male citizen of the United States, of the age of twenty-one years or upwards, who has been a resident of the State for one year" and of the county, etc., a lesser period, shall be entitled to vote. But since the adoption of the 14th Amendment to the Constitution of the United States—which provides in the first section that "All

persons born or naturalized in the United States and subject
to the jurisdiction thereof are citizens of the United States
and of the State wherein they reside"—the terms "resident of
a State" and "citizen of a State," as applied to a citizen of the
United States, are equivalents. *Md. Bill of Rights*, Art. 7;
*Slaughter-House cases*, 16 Wall. 73; *Anderson* v. *Watt*, 138
U. S. 702. The *status* of citizen of a State being thus depend-
ent on the Constitution of the United States, the repugnancy
of the Act under consideration, not only to the provision of
the 14th Amendment to the Constitution of the United States
above referred to, but to the subsequent provisions, in the
same section prohibiting a State from making or enforcing any
law "which shall abridge the privileges or immunities of citi-
zens of the United States," and forbidding a State from deny-
ing to any person within its jurisdiction "the equal protection
of the laws," is manifest.

In the first place, the declaration of intention is exacted not
from those who are about to remove into this State, but from
those who have already located here. But the *status* of a
person removing into Maryland to live, and who has no in-
tention of returning to his former home, is fixed by the opera-
tion of the Constitution of the United States. He becomes in-
stantly a citizen of Maryland. A statute, therefore, which—as
the one under consideration does—studiously refrains from
seeking to ascertain *when the intention of the declarant to perma-
nently live in Maryland was formed*, and declares, in effect,
that the *status* of the party shall be determined as of the date
of the making of the declaration, thus refusing to give effect
to a prior acquired *status* derived from the Constitution of the
United States, and to recognize the existence of privileges
which attached to such *status* by virtue of the State Constitu-
tion plainly contravenes the provision which conferred the
*status* of citizen of the State upon the removal of the person
into Maryland with the intention of making it his permanent
domicil. *Barron* v. *Burnside*, 121 U. S. 186.

The statute makes an unjust discrimination against citizens
who remove into Maryland after March 29th, 1902. The

duty it imposes upon such citizen is onerous and oppressive. Such a statute deprives of the equal protection of the laws. *Railroad Co.* v. *Ellis,* 165 U. S. 150; *Voight* v. *Wright,* 141 U. S. 62; *Brimmer* v. *Rebman,* 138 U. S. 78; *Minnesota* v. *Barber,* 126 U. S. 313; *Mills* v. *Green,* 67 Fed. Rep. 818.

II. The Legislature of Maryland may enact registration laws, but such laws must tend to facilitate the exercise of the right of suffrage and must not be so framed as to unreasonably impede, hinder and deter from the acquiring of or the exercise of the right to vote. The law under review imposes burdensome and offensive conditions which have the effect of deterring from instead of facilitating the acquisition and exercise of the right of suffrage by those constitutionally entitled thereto. The statute is not sustainable as a registration law. *Brewer* v. *McClelland,* 144 Ind. 423; *Att'y Gen'l* v. *Detroit,* 78 Mich. 545, 559; *White* v. *Commrs.,* 13 Ore. 317; *Kinneen* v. *Wells,* 144 Mass. 497; *People* v. *Canaday,* 73 N. C. 198; *State* v. *Williams,* 5 Wis. 308; *Dells* v. *Kennedy,* 49 Wis. 555; *McCafferty* v. *Guyer,* 59 Pa. St. 109; *Green* v. *Shumway,* 39 N. Y. 418; *Monroe* v. *Collins,* 17 Ohio St. 686; *Daggett* v. *Hudson,* 43 Ohio St. 561; *State* v. *Butts,* 31 Kan. 554, 555; *Mills* v. *Green, supra; Cooley Const. Lim.,* 753.

III. The law in question cannot be sustained as an exercise of the power to change at will rules of evidence or modes of proof which affect merely the remedy and do not impair a substantial right.

*John Prentiss Poe,* for the appellees.

The question of residence and citizenship dependent upon residence is a mixed question of law and fact. So far as it relates to the acquisition of citizenship and the right to vote in Maryland by a naturalized foreigner or by a citizen of any other State of the Union, it depends upon the fact of removal into this State and the intent of such removal.

Removal into the State and intent to become a citizen must both exist and if questioned must be proved according to the rules of evidence in force when the question arises.

The object of section 25B was to prescribe the evidence by which the intent of any person coming into the State of Maryland was to be shown and not at all to impair, alter or affect the provision of the Constitution of the State requiring a residence of one year within the State as a qualification for the right to vote.

In this case the appellant did not produce the evidence before the registration officers which the statute prescribes as the *only* evidence by which the intent to become a citizen of Maryland can be shown, and the whole question therefore is whether it is competent for the Legislature to prescribe the kind of proof of intent to become a citizen necessary to be furnished. This question was thoroughly discussed in the cases growing out of the Registration Act of 1890, ch. 573, re-enacted as section 25A of Article 33, by the Act of 1901, ch. 2. *Southerland* v. *Norris*, 74 Md. 326; *Lancaster* v. *Herbert*, 74 Md. 334; *Sterling* v. *Horner*, 74 Md. 573; *McLane* v. *Hobbs*, 74 Md. 166; *Bowling* v. *Turner*, 78 Md. 595.

The distinction taken and enforced in these cases between a law altering or abridging the constitutional qualification of citizenship and a law prescribing the evidence by which the citizenship must be shown, is clearly applicable to section 25B.

Whatever may have been the undisclosed intent of the petitioner when, as he says, he moved into Maryland on the 7th day of June, 1902, such undisclosed intent cannot be regarded in the face of the statute which prescribes the exclusive mode by which it can be manifested and proved. Until he complied with the provisions of the statute, he was to be regarded as a temporary sojourner in Maryland, whose intent to become a citizen had not been made known in the only way fixed by law.

No vested right of the petitioner is affected by the statute. As to him, it was not retroactive; it was in force when he came into the State, and was a fair, simple, inexpensive and reasonable mode of conclusively settling the question of intent, which in cases relating to residence is oftentimes very difficult to determine. He was bound to take notice of the

general law of the State when he came into it, and his failure
to do what the law prescribes in order to show his intent
to become a citizen must be interpreted as indicating conclu-
sively that the necessary intent to become a citizen did not
then exist.    The reasoning of this Court in the opinion writ-
ten by JUDGE McSHERRY in *Southerland* v. *Norris*, 74 Md. 326,
and the authorities there cited, are conclusive of the question.

There is no substantial difference between the law there
construed and held valid and constitutional and the law now
under consideration.    Nor is there any appreciable distinction
between the case of a Marylander *losing* his right to vote by
removing from the State without making the affidavit pre-
scribed by law, as the only evidence of his intent to continue
a citizen of the State, notwithstanding such removal, and the
case of a Virginian *acquiring* a right to vote by coming into
Maryland without making the affidavit prescribed by law as
"the only competent and admissible evidence of the intent" to
become a citizen of Maryland by such coming into the State.
The statutory evidence of intent required in the one case may
be equally well exacted in the other—and as the law appli-
cable to the one is conceded to be constitutional, so must the
same law applicable to the other be held in like manner to be
constitutional.

Section 25B does not violate any provision of the 14th
Amendment.    *Slaughter-House cases*, 16 Wall. 73-82-127.

The intention to make Maryland his permanent home must
be proved before the petitioner can bring his case within the
terms of this amendment, and if it be true, as it unquestion-
ably is, that the mode and measure of such proof can lawfully
be prescribed by the State, then, as the petitioner did not fur-
nish nor offer to furnish such prescribed proof, he had no
right to be registered as a legal voter.

The 14th Amendment does not make the petitioner a citi-
zen of Maryland and give him the right to vote irrespective
of her constitution and laws.

It does not annul the qualifications of residence and inten-
tion to become a citizen prescribed by the State convention

nor declare that from the *fact* of *residence alone* the intention to become a citizen, shall be or may be presumed in the teeth of a State law which forbids such presumption, and exacts other specific proof.

It does not declare that persons coming into Maryland from other States shall *instantly* become entitled to be registered as voters in Maryland, or be entitled to be so registered after a residence of one year, in the absence of what the State law declares shall be the only competent and admissible evidence of the intent thereby to become a citizen. It merely declares that such persons shall become citizens. But it was never intended thereby to deny to a State the right to prescribe the evidence by which the intention of a person from another State to become a citizen entitled to vote must be proved.

So too, as the law applies equally and uniformly to all persons from other States coming into Maryland there is no ground for the contention that it operates as an unjust and unreasonable discrimination.

The objection that our statute is repugnant to the general spirit of the Constitution of the United States and the fundamental rights of citizens of the United States is too vague and indefinite to call for comment.

PAGE, J., delivered the opinion of the Court.

William H. Pope, the appellant, was born in the city of London, and was brought by his parents, when less than a year old, to the United States, where he has resided ever since. Before he had reached the age of twenty-one years his father became a naturalized citizen, by reason whereof he has been for many years a naturalized citizen of the United States.

On 7th June, 1902, the petitioner with his wife and child removed from the District of Columbia into Montgomery County in this State, and has since resided there, having at the time of his removal and ever since the intention of making that place his permanent domicil and of becoming a citizen of the State of Maryland.

On 29th September, 1903, he applied for registration to the Board of Registration of the election district in Montgomery County in which he resided to be registered as a qualified voter, but the board refused to comply with his request for the sole reason that he did not produce to them, as evidence of his intention to become a legal voter, an entry of his intention, made one year prior to his application, in a record book kept by the Clerk of Montgomery County, or a duly certified copy of said original entry, as required by section 25B of Article 33, Code of Public General Laws (being chapter 133 of the Acts of 1902).

The petitioner admits he has not complied with the provisions of that statute, in that he did not make or register a declaration of his intention to become a citizen and resident of the State as required by its provisions; but contends that these provisions contravene the Constitution of the State of Maryland and of the United States and are therefore null and void. For that reason he has filed his petition to the lower Court praying it to revise the action of the Board of Registry, and to order his name to be entered on the registry of voters, &c.

On demurrer a judgment was entered dismissing the petition and the petitioner has appealed to this Court.

As preliminary to what may hereinafter be advanced in this opinion, it may be stated that this Court has more than once decided that by the Constitution of this State the qualifications of a voter are, that he shall be a citizen of the United States of the age of twenty-one years or upwards, who has been a resident of the State for one year and of the Legislative District of Baltimore City or of the county in which he may offer to vote for six months preceding the election; that he must be registered before he can exercise his right to vote, that the Legislature of the State may regulate the method of registration by establishing an uniform system of registration in which the several steps to be taken by the applicant shall be prescribed, and the kind of evidence by which his right to be registered shall be established ; provided however that under the pretense of regulating such procedure no person can be

precluded or hindered from the complete enjoyment of his rights, as guaranteed to him by the Constitution of the State or of the United States. These principles are well established, and we do not understand them to be controverted in this case.

It may also be advisable to state with some precision, what kind of residence it is that will entitle a person to vote in this State. He must be a citizen of the United States; but that alone does not make a citizen of the State of Maryland. A person residing within the District of Columbia or in one of the territories, is a citizen of the United States, but not of any one of the States; though it is true that one who is a citizen of a State is also a citizen of the United States. *Slaughter-House cases*, 83 U. S. 36–130.

To become a citizen of the State, a person must reside therein, and to entitle him to a franchise he must have resided within the State at least one year and in a district six months before the election. The mere abiding in a place within the State is not sufficient. He must "reside" there, within the meaning of the word as employed in the Constitution; and what that is, seems to be entirely clear under all the decisions in this State and elsewhere. In *Mitchell* v. *U. S.*, 21 Wallace, 138, the Supreme Court said: Domicil is "a residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited time." And this Court in *Thomas* v. *Warner*, 83 Md. 20, also said, "the idea of residence is compounded of fact and intention; to effect a change of it, there must be an actual removal to another habitation, and there must be an intention of remaining there." In view of these authorities, which could be greatly multiplied, it requires no citation of cases to show that whenever it is proposed to establish a change of residence, it is incumbent upon the party to establish by proper testimony, 1st, an actual removal to another habitation and 2nd, that he has the intention of remaining there. To establish the second of these propositions is sometimes difficult, and indeed impossible by clear and unambiguous evidence. Facts often exist and are proven, from which may reasonably be drawn conclusions,

either that he had or had not the intention to change his legal residence. To meet this difficulty and to furnish some rule by which safer conclusion could be arrived at, it has some-time, been laid down, that to establish a change of residence, it should at least be made to appear that the former residence has been abandoned; or that the family has become settled in the new residence, and made it the centre of the family affairs. The statute we are considering is an effort to supply another rule of evidence and in the judgment of the Legislature pre-sumably a safer one, for solving the question of the intention of the party in cases where he has recently moved into the State. The proof of intention in such a case, after the pass-age of the Act, must be the record of his declaration of intent, to be made as provided in the Act, and no presumptions of such intent can be otherwise proved. It provides that no person coming into the State after the passage of the Act, can be registered as a legal voter until one year after his intent to become such shall be evidenced by the entry in the record book of the Clerk of the County or by a certified copy thereof. The right to become a registered voter under such proof dates from the time of the registration of the intent in the record book of the clerk, and therefore if the intent be registered less than a year before the sitting of the Register of Voters, but more than one year before the next election, he would be entitled to be registered as a voter of that elec-tion. The record of the declaration of intent, would show that he is entitled to be a legal voter at that time under the Constitution; and under the provisions of sec. 16 of Art. 33, it would be the duty of the register to so enter his name. The words, "no person coming into this State from any other State, &c., shall be entitled to registration as a legal voter of this State until one year after his intent to become a legal voter shall be thus evidenced by such entry, &c." must be construed in connection with other portions of the law gov-erning registration; and therefore it seems to be plain that when the proof according to the legal requirement shows that the party is entitled to vote at the next election, the Board of

Registration cannot refuse to place his name on the registration book, so that he may vote at the next election.

We do not think this requirement is unreasonable, or hinders or deters any one from acquiring or exercising his right to vote. It is merely that persons removing into the State shall indicate their intent to become citizens and residents on the record book. No fee is chargeable against them for so doing, and none for obtaining a certified copy thereof. The entire burden is to so register, with their names, residence, age and occupation. Such requirement surely cannot be regarded as unreasonable or as in any respect imposing a burdensome or offensive condition.

Nor does the statute impose qualifications for voting, other than those prescribed by the Constitution. It leaves those qualifications precisely as they were before. It deals exclusively with the evidence necessary to establish residence, by providing what the evidence of residence shall be. This Court has so recently discussed the principles applicable to a case of this kind, in *Southerland* v. *Norris*, 74 Md. 331, that no further discussion respecting them is needed here. In that case the Court had under consideration a statute that provided that all persons whose names were on the registration lists, who had removed at the date of the passage of the Act from the State and taken up a domicile beyond the limits of the State, should be presumed to have thereby intended to abandon their residence in the State, unless within thirty days after the passage of the Act they should go in person before the Clerk of the Court and make affidavit that when they so removed they did not intend to change their residence. By the Act now in question all persons coming into the State must make the declaration of their intent to become citizens and residents of the State. It is impossible to perceive any difference in principle between the two Acts further than that the one refers to the case of persons going out of the State, while the other applies to the case of those coming in. Neither of these Acts changes the qualification of voters as provided by the Constitution and both establish a rule of evidence by

which in the one case the intention of a person leaving the State may·be ascertained, and in the other the intention of a person coming into the State.    After a careful and exhaustive examination the Court in *Southerland's case* sustained the validity of the law with respect to persons leaving the State, holding that the new rule of evidence therein established violated no vested right, and imposed no.unreasonable condition, so as to render the statute either oppressive or invalid.    The principles established by that case we think are applicable to the facts of this case.

But it is also contended that the obligation imposed by the Act on persons removing into the State after the 29th day of March, 1902, to make the declaration of intention, operates to impair the right of citizenship conferred by the Constitution of the United States.    The contention is that since the adoption of the 14th Amendment, the *status* of citizenship of a State, is dependent on the Constitution of the United States, in that by that amendment the words "resident of a State," and "citizen of a State" are equivalent terms, "as applied to citizens of the United States," and that the Act under consideration, by declaring in effect that the *status* of the declarant shall be determined as of the date of making the declaration, refuses to give effect to a prior acquired *status* derived from the Constitution of the United States, and thereby abridges the "privileges or immunities" of citizens of the United States, and denies to them "the equal protection of the laws."    We have already pointed out that the Act does not discriminate against any person or class of persons, but merely establishes a rule of evidence in respect to the intention of a person coming into the State.    To constitute residence, within the meaning of our laws regulating the elective franchise, as well as of the 14th Amendment, an actual abode within the State, as well as the intention of remaining must concur.    *Anderson* v. *Watt*, 138 U. S. 702; *Mitchell* v. *U. S.*, *supra; Thomas* v. *Warner*, 83 Md. 20.

The rule of evidence thus established, does not change the character of the residence as it existed prior to the passage of

the Act, but merely goes to the ascertainment of one of the constituent elements, theretofore necessary for the ascertainment of the question of residence.    Moreover it is now well settled by the adjudications of the Supreme Court of the United States that the 14th Amendment did not add the "right of suffrage to the privilege and immunities of citizenship," and that the Constitution of the United States does not confer the right of suffrage upon any one.    *Minor* v. *Happersett*, 21 Wall. 162–178.

The scope of the series of constitutional provisions of which the 14th Amendment is one, was clearly stated in the case of *Strauder* v. *West Virginia*, 100 U. S. 303–312.    There the Court after referring to the *Slaughter-House cases* (16 Wall. 36), said.    "The existence of laws in the States where the newly emancipated negroes resided, which discriminated with gross injustice and hardship against them as a class, was the evil to be remedied, and by it (the 14th Amendment) such laws were forbidden.    We doubt very much whether any action of a State not directed by way of discrimination against the negroes as a class will ever be held to come within the purview of this provision."    It can certainly not be contended in this case, that this Act discriminates in any manner against negroes or any other class ; its provisions apply to "all persons" of every class.    The 14th Amendment recognizes that citizens of the United States coming into the State with intent to remain, are citizens of the State ; but it does not confer on them the right to vote in the State ; nor deny to the State the right to declare the terms and conditions upon which its citizens may vote, provided however (under the 15th Amendment) the right of citizens of the United States to vote shall not be denied or abridged on account of race, color or previous condition of servitude. *United States* v. *Reese*, 92 U. S.214–256.

We are therefore of the opinion the provisions of the law are not repugnant to the Constitution of the United States or of the State of Maryland.

The order of the lower Court must be affirmed.

*Order affirmed with costs to the appellee.*

(Decided *per curiam* October 22nd, 1903.    The foregoing opinion was filed December 3rd, 1903.)