IN THE MATTER OF THE APPEAL OF THOMAS MALCOLM BROWN, FROM THE DECISION OF THE REGISTRATION OFFICERS OF THE THIRD ELECTION DISTRICT, IN THE SIXTH REPRESENTATIVE DISTRICT OF NEW CASTLE COUNTY.

(*October* 15, 1946.)

Case heard before SPEAKMAN, J., sitting as Resident Associate Judge of New Castle County.

*P. Warren Green* for appellant.

*Daniel F. Wolcott* and *Thomas Cooch,* amici curiae.

*Clair J. Killoran,* Attorney-General, for the State.

SPEAKMAN, Resident Associate Judge of New Castle County:

Pursuant to the mandate contained in the Constitution, the General Assembly passed an Act, which was approved May 27, 1898, being Chapter 36 of Volume 21 of our Laws, in which it was provided that it should be the duty of the resident Associate Judges of the respective Counties to sit at certain designated times and places for the purpose of hearing appeals from the decisions of the registration officers. By the Act, and by subsequent Acts, rules of procedure, to a limited extent were prescribed concerning appeals, applications and motions; but in no event to the extent of limiting or hampering the sitting Judges in the discharge of their constitutional duties. Beyond this my attention has not been directed to any legislative action by which any attempt has ever been made to restrict or limit the duties imposed upon the sitting Judges by the Constitution, unless, as claimed, the Act of 1945, Chap. 146, Vol. 45, has that effect.

Before any consideration can properly be given to the contention that the Act is unconstitutional, it must first be determined whether the authority to do so is given by the Constitution to a resident Associate Judge when sitting to hear appeals from the decisions of the registration officers. This, I believe, depends on whether the power given by the Constitution was conferred upon him as a Judge, as distinguished from a Court. In *United States v. Clark, Fed. Cas.* No. 14,804, 1 *Gall* 497, Judge Story, sitting in the First Circuit Court, said:

"A court is not a judge, nor a judge a court. A judge is a public officer, who, by virtue of his office, is clothed with judicial authorities. A court is defined to be a place in which justice is judicially administered. * * * It is the exercise of judicial power, by the proper officer or officers, at a time and place appointed by law. The officers exist independent of the exercise of such appointed jurisdic-

tion; though the court may not, in general, be holden independent of its officers. * * *."

By the Constitution, art. 5, § 4, appeals from the decisions of the registration officers of the respective counties, are to the resident Associate Judge of the County, or in the case of his disability or absence from the County, to any Judge entitled to sit in the Supreme Court. Each of these Judges, in the language of Judge Story, "is a public officer, who, by virtue of his office, is clothed with judicial authorities." A court, again in the language of Judge Story, "is the exercise of judicial power, by the proper officer or officers, at a time and place appointed by law." The times and places for the hearing of the appeals in question are appointed by law. At the hearings it is the duty of the Judge, in the exercise of the authority conferred on him by the Constitution, art. 5, § 4, to hear and determine such appeals as shall be presented to him. This involves the hearing of the evidence, the finding of the facts as established by the evidence, the application of the law to the facts, and a determination based upon the law and the facts. Clearly this is a judicial determination, not by the Judge as a Judge, but by him as a Court. What was said in *United States v. Duell*, 172 *U. S.* 576, at 587, 19 *S. Ct.* 286, 290, 42 *L. Ed.* 564, concerning appeals from the decision of the Commissioner of Patents, is particularly applicable to the present case. There Mr. Chief Justice Fuller, speaking for the Supreme Court of the United States, said:

"By the acts of 1839 and 1852 an appeal was given, not to the circuit court of the District of Columbia, but to the chief judge or one of the assistant judges thereof, who were thus called on to act as a special judicial tribunal."

I think that it was clearly the intention of the constitutional convention, which adopted the 1897 Constitution, to constitute the resident Associate Judges and the

other Judges, when sitting to hear appeals from the decisions of the registration officers, special tribunals, with authority to judicially determine by summary proceedings such appeals as should be presented to them.

The views which I have expressed as to the meaning of the constitutional provision are fortified by the application of the well recognized rule of practical construction.

Judge Cooley in his work on *Constitutional Limitations*, 8th Ed., p. 144, says:

"But where there has been a practical construction, which has been acquiesced in for a considerable period, considerations in favor of adhering to this construction sometimes present themselves to the courts with a plausability and force which it is not easy to resist. Indeed, where a particular construction has been generally accepted as correct, and especially when this has occurred contemporaneously with the adoption of the constitution, and by those who had an opportunity to understand the intention of the instrument, it is not to be denied that a strong presumption exists that the construction rightly interprets the intention."

That eminent jurist, Honorable William C. Spruance, was one of the outstanding members of the convention that adopted the Constitution of 1897. The debates will show that he and many other members of the convention were determined that, by a constitutional provision, the obnoxious assessment and poll tax laws as they then existed in this State, could not, forever thereafter, be used as a means to prevent the free exercise of the right of franchise. It was to insure to all qualified electors in the State the right to qualify and vote, without hindrance, that the provision for a uniform registration, with a right of appeal to the designated members of the Judiciary, was adopted.

By the Constitution of 1897, art. 4, § 2, the Supreme Court consists of six judges, of whom one is the Chancellor, one is the Chief Justice and the other four are Associate Judges. One of the Associate Judges may reside in any part of the State. The other three Associate Judges, are known as resident Associate Judges and one of them shall reside in each County. The three resident Associate Judges first appointed under the Constitution of 1897 were Honorable William C. Spruance, resident in New Castle County, Honorable James Pennewill, resident in Kent County, and Honorable William H. Boyce, resident in Sussex County. Judge Pennewill remained on the bench for thirty-six years, the last twenty-four being as Chief Justice. He was one of the ablest Chief Justices in the history of the State.

The first general registration after the adoption of the 1897 Constitution was during the latter part of 1898. It was for the general election held in November of that year. It was a matter of common and general knowledge to the people throughout the State some of whom are still living, that in each of the counties many appeals were taken to the resident Associate Judges from the decisions of the registration officers. The manner of conducting the hearings on appeal was also common and general knowledge to such people. The proceeding then adopted has since been followed in the respective counties, and will be judicially noticed. As I am personally conversant with the practice adopted and followed, proof of the practice is not required. 30 Am. Jur. 52.

As above stated, the General Assembly fixed the times and places for the hearing. It did but little, if anything, to facilitate the conduct of the hearings. Judge Spruance during the hearing of the appeals in 1898, and thereafter until the expiration of his term of office in 1909, never indicated by his actions that he did not consider that he, as resident

Associate Judge, was not sitting as a Court. He directed the Prothonotary of New Castle County to act as his clerk, he issued subpoenas and attachments, and directed that they be served by the Sheriff of the County, he heard the testimony of the interested parties and their witnesses, he determined the facts as shown by the evidence, he applied the law to the facts and entered an order in accordance with the law and the facts, he taxed witness fees and other costs and entered orders for their payment, and assumed many other necessary powers which only a Court, in the absence of specific legislative authority, could exercise. The procedure adopted by Judge Spruance has been consistently followed in New Castle County down to the present time. It was also followed by Judge Boyce and his successors in Sussex County.

The proceedings in Kent County were conducted by Judge Pennewill during his term as resident Associate Judge of his County, in a manner similar to that adopted by Judge Spruance in New Castle County, except that process was not issued to compel the attendance of witnesses, nor were orders made for the payment of witness fees. The procedure adopted by Judge Pennewill was not departed from by those who followed him as resident Associate Judge in Kent County.

The construction of the constitutional provision made within a short time after the adoption of the Constitution, by the resident Associate Judges of the three Counties, one of whom was an outstanding member of the constitutional convention, and consistently adhered to for almost half a century, cannot be cast aside.

My conclusion is that a resident Associate Judge when sitting to hear appeals from the decision of the registration officers, is sitting as a special constitutional tribunal with the authority, wherever necessary in the exercise of its

jurisdiction, to pass upon the constitutionality of any pertinent statute.

In support of his contention that the statute in question is constitutional, the Attorney General relies on *Pope v. Williams*, 98 *Md.* 59, 56 *A.* 543, 66 *L. R. A.* 398, 103 *Am. St. Rep.* 379, affirmed 193 *U. S.* 621, 24 *S. Ct.* 573, 48 *L. Ed.* 817. In that case the court upheld the constitutionality of a statute, the provisions of which are substantially the same as those of the Delaware statute. The Maryland Court held that the requirements of its statute were not unreasonable, that they did not hinder or deter anyone from acquiring or exercising his right to vote, that they did not impose qualifications for voting, other than those prescribed by the Constitution, but left those qualifications precisely as they were before, and that they dealt exclusively with the evidence necessary to establish residence by providing what the evidence of residence should be. I am unwilling to accept the Pope case as an authority, principally, because neither in the pertinent section (Article 1, Section 5), or elsewhere in the Maryland Constitution, is the General Assembly required to fix any period prior to the election within which qualified voters shall register. The right to fix the days for registration is left, without any restriction, to the General Assembly. This is not true of the Delaware Constitution. In it, Article V, Section 4, provides that

"There shall be at least two registration days in a period commencing not more than one hundred and twenty days, nor less than sixty days before, and ending not more than twenty days, nor less than ten days before, each General Election, on which registration days persons whose names are not on the list of registered voters established by law for such election, may apply for registration, * * *."

Those contending that the statute in question is unconstitutional have advanced many reasons in support of their contentions. As to some of them, I have not been able to reach a final conclusion because of the short time available to me for their consideration.

■ It is urged that the statute adds a qualification for voting not required by the Constitution and it is, therefore, invalid. I am unable to accept this view. Essentially the statute is a registration law. By Section 1, the Board of Registration of each county is required to keep a record book, to be known as "Declaration of Intent Book." Upon the application of any person defined in Section 1 of the statute, to the Board of Registration, it is provided that:

"The Board of Registration shall enter in said book (1) The date of application, (2) The name of the person, (3) His or her address in this State, (4) His or her address in the State whence he or she came, (5) Age, (6) Occupation, (7) His or her declaration of intent to become a citizen and Resident of this State and (8) His or her signature witnessed by a Member of the Board of Registration or by the Secretary or any Clerk thereof." Section 2.

The statute further provides, in Section 3 thereof, that every person so *registered* under the provisions of the Act shall be entitled to receive from the Board of Registration a copy of such record entry duly certified and signed, which shall be evidence of his or her intention to become a citizen and resident of Delaware. In Section 4 of the statute it is provided that before any such person as defined in Section 1 thereof shall be entitled to registration as a registered voter for any General Election of this State, he or she so desiring to register shall present to the registration officers a certified copy of the record entries of his or her intent to become a citizen and resident of this State, as the same appears in the "Declaration of Intent Book." In other words, before

any person defined in Section 1 of the Act, who possesses all the constitutional qualifications to vote at an ensuing General Election, is entitled to register with the registration officers sitting in his election district, he must have at least one year prior to the General Election, registered with the Board of Registration of a county his name, address, age, occupation and declaration of intent to become a citizen and resident of this State.

Our Constitution guarantees the right to every citizen of our State who will possess all the constitutional qualifications to vote at an ensuing General Election, if his name is not already on the list of registered voters established by law, the right to be registered, without hindrance, as a registered voter. It is immaterial whether he is a native born citizen of the State, or whether he came into the State from elsewhere, and became a citizen of the State. To register, he has the constitutional right to apply on one of the days fixed by law, to the registration officers of his election district, and no one of these days can, by constitutional provision, be more than one hundred and twenty days before the General Election. He must at the time he applies for registration, if required by the registration officers, establish by competent evidence his right to be registered as a registered voter. Any creditable evidence, available to him, must be accepted by the registration officers. He cannot constitutionally be denied the right to register in his registration district solely because he failed to comply with another registration law which, by its provisions, required him to register his declaration of intent to become a citizen and resident of the State, a year or more before the General Election. This is exactly what the statute in question attempts to do as to those persons defined in Section 1 of the statute. It is my opinion that the statute is a registration law, and that it is on that ground unconstitutional.

▮ It is argued, however, by the Attorney General that, as held by the Court in the Pope case in construing the Maryland law, that the Delaware law deals exclusively with the evidence necessary to establish residence by providing what the evidence of residence shall be. It of course must be conceded that the Legislature may prescribe certain rules of evidence. The question here is can it prescribe a rule of conclusive evidence. In IV Wigmore on Evidence, at 715, Professor Wigmore says that

"It is one thing for the Judiciary while exercising in its own way its constitutional powers to choose to accept the aid of an official certificate in reaching its determination; but it is quite a different thing for the Judiciary to be forbidden altogether to exercise its power in a certain class of cases. The judicial function under the Constitution is to apply the law in controverted cases; to apply the law involves the determination of the facts; to determine the facts necessarily involves the investigation of the evidence as a basis for that determination. To forbid investigation is to forbid the exercise of an indestructible judicial function.

"Hence, to make a rule of conclusive evidence, compulsory upon the Judiciary, is to attempt an infringement upon their exclusive province."

▮ There is no essential difference between a law which compels a court to accept a certificate as conclusive evidence of a fact and one that makes the absence of a certificate, conclusive evidence of a fact. It is my opinion that the legislature has not the power to declare that the absence of a certificate shall be conclusive evidence of a fact which is not necessarily so. As above stated, I think that the statute in question is a registration law, and for the reasons above stated is unconstitutional and void, but if it should be assumed for the purpose of this proceeding that it is not unconstitutional on that ground, it is beyond doubt unconsti-

tutional on the ground that it denies to the petitioner in this proceeding, and others similarly situated, the right to establish by available competent evidence their constitutional rights to register as registered voters at the time of their application for registration to the registration officers in their election districts.

For the reasons above stated, the registration of the appellant will be ordered.