Lars **FORSSENIUS**, Plaintiff,

v.

A. M. **HARMAN**, Jr., et al., Defendants.

Horace E. **HENDERSON**, Plaintiff,

v.

A. M. **HARMAN**, Jr., et al., Defendants.

Civ. A. Nos. 3897, 3898.

United States District Court
E. D. Virginia,
at Richmond.

Argued May 12, 1964.

Decided May 29, 1964.

Probable Jurisdiction Noted
Oct. 12, 1964.

See 85 S.Ct. 83.

H. E. Widener, Jr., David H. Frackelton, Bristol, Va., L. S. Parsons, Jr., Norfolk, Va., J. L. Dillow, Pearisburg, Va., John N. Dalton, Radford, Va., Bentley Hite, Christiansburg, Va., for plaintiffs.

Robert Y. Button, Atty. Gen. of Virginia, Richard N. Harris, Asst. Atty. Gen. of Virginia, E. Milton Farley, III, Joseph C. Carter, Jr., Richmond, Va., Edward H. Richardson, Commonwealth's Atty., Roanoke County, Salem, Va., Ralph G. Louck, Commonwealth's Atty., Fairfax County, Fairfax, Va., for defendants.

Before BRYAN, Circuit Judge, and HOFFMAN and BUTZNER, District Judges.

ALBERT V. BRYAN, Circuit Judge.

Since the adoption of the 24th Amendment forbidding exaction of a poll tax as a prerequisite to voting in a Federal election,* Virginia has enacted an additional qualification for the Federal voter. If he has not paid the poll tax still required in State elections, he must file within the same time a certificate of continuing residence. No such certificate is demanded of a voter in an election for the Virginia House of Delegates. By Article I, Section 2 and by the 17th Amendment of the United States Constitution, it is ordained that electors choosing a Representative or Senator in

---

* An election for a State or local office we shall term a State election and a voter therein a State elector; an election for a Federal office will be a Federal election, and a voter therein a Federal elector.

Congress "shall have the Qualifications requisite for Electors of the most numerous Branch [the House of Delegates] of the State Legislature(s)". Thus, the Virginia statutes—1963 Acts—imposing the extra test upon the Federal elector contravenes, as this suit now asserts, these constitutional provisions.

The plaintiffs further assert that the ultimate effect of the 24th Amendment is to rescind the power of the State to insist upon the payment of a poll tax as a condition for voting in the election of members of the House of Delegates. We do not agree.

These propositions were posed by the two complaints here, one of Lars Forssenius and the other of Horace E. Henderson, both citizens of the United States and of the State of Virginia having the requisite residence to vote, and each suing for himself and others as a class similarly situated. The suits have been consolidated and are now treated as a single cause.

The 1963 Acts were adopted at an extra session of the Virginia Legislature in anticipation of the promulgation of the 24th Amendment, which occurred February 4, 1964. Prior thereto, the Constitution of Virginia, in Article II, and the statutes of the State, Code §§ 24–67 and 24–17, provided for the registration and voting of electors in all elections, both Federal and State, primary and general. In brief, the requirements were: age of not less than 21 years, residence within the State for one year and of the city or county six months and the payment "at least six months prior to the election * * * to the proper official all State poll taxes [$1.50 annually] assessed or assessable against him for three years next preceding such election". Registration is required only once. Each election year, however, there is compiled a new list of poll taxes paid.

Amendment 24, so far as pertinent, provides in § 1:

"* * * The right of citizens of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax".

Obviously, the effect of this amendment was to annul in Virginia's Constitution and statutes payment of a poll tax as a condition for registering and voting in primary and general Federal elections. Guinn v. United States, 238 U.S. 347, 362, 35 S.Ct. 926, 59 L.Ed. 1340 (1915); Ex parte Yarbrough, 110 U.S. 651, 655, 4 S.Ct. 152, 28 L.Ed. 274 (1884).

The 1963 Acts directed a division of the registration and voting qualification record into two classes, one for Federal elections and another for State elections. For this purpose Code § 24–67 providing for registration, and § 24–17 for voting, were each amended and enlarged. No change was made with regard to State elections. The changes inserted for participation in Federal elections were twofold: (1) the withdrawal of the poll tax payment both for registration and for voting, and (2) the addition, for voting, of this requirement in Code § 24–17.2 set out in part below:

"Proof of residence required; how furnished.—(a) No person shall be deemed to have the qualifications of residence required [by the Constitution and statutes of Virginia] in any calendar year subsequent to that in which he registered * * * and [he] shall not be entitled to vote in this State [in any Federal election] unless he has offered proof of continuing residence by filing in person, or otherwise, a certificate of residence at the time and in the manner prescribed in paragraph (b) of this section, or, at his option, by * * * [payment of the customary poll taxes]. Proof of continuing residence may only be established by either of such two methods.

"(b) Any person who shall offer proof of continuing residence by filing a certificate of residence as

provided in paragraph (a) of this section, shall file with the treasurer of his county or city not earlier than the first of October of the year next preceding that in which he offers to vote and not later than six months prior to the election, a certificate in form substantially as follows:

" 'I do certify that I am now and have been a resident of Virginia since the date of my registration to vote under the laws of Virginia, that I am now a resident of ...... (city or county), residing at ...... (street and number, or place of residence therein), and that it is my present intention not to remove from the city or county stated herein prior to the next general election.

...........

Witnessed:

or

Subscribed and sworn to before me this ....... day of ......., 19....

...............
Notary Public'

Every such certificate shall bear the signature of the person offering the same, and shall be verified by his affidavit or witnessed by at least one adult.

"(c) Proof of continuing residence by either of the two methods provided for in paragraph (a) of this section shall be deemed conclusive, subject only to challenge under § 24–253."

As a result of the new statutes a citizen after registration may vote in both Federal and State elections if he has satisfied the assessable poll tax; if he has not paid the tax he cannot vote in any State election but he may vote in a Federal election upon filing the certificate of residence.

■ I. The pivotal point before us is whether or not the certificate of residence is simply an instrument evidencing residence, that is, merely proof of the residence qualification; or is a separate qualification put upon the Federal voter,

or at least an enlargement of the residence qualification, which in either event is not placed on the State voter. Concededly, residence is a qualification properly required for both Federal and State suffrage. Lassiter v. Northampton County Bd. of Elections, 360 U.S. 45, 51, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959).

■ In this determination, we reject the abstention argument pressed by the defendants: that the significance of the certificate and its character as used in the 1963 Acts is a State question, and we should stay our hand until the courts of Virginia are afforded the opportunity to interpret the term. Whether a requirement of State law constitutes a discrimination against the Federal voter, either by a separate or a disproportionate qualification, within the meaning of Article I, Section 2 and the 17th Amendment of the Federal Constitution is immediately a Federal question. No matter the careful and scrupulous study of the State courts, the determination is one manifestly within the framework of the Federal Constitution and so must be the decision of the Federal court. In Ex parte Yarbrough, supra, 110 U.S. 651, 663, 4 S.Ct. 152, 158 the Court said:

"But it is not correct to say that the right to vote for a member of congress does not depend on the constitution of the United States.

\*  \*  \*  \*  \*  \*

"The states, in prescribing the qualifications of voters for the most numerous branch of their own legislatures, do not do this with reference to the election for members of congress. Nor can they prescribe the qualification for voters for those *eo nomine*. They define who are to vote for the popular branch of their own legislature, and the constitution of the United States says the *same* persons shall vote for members of congress in that state". (Accent added.)

Because of the 1963 Acts, with the poll tax removed from Federal elections, the electors in the two elections do not enjoy

equal eligibility. The Federal elector must file a witnessed or notarized certificate of residence, not only declaring himself a current resident of Virginia, but also that he has been a resident since his registration. After giving the street number of his residence, he must give assurance of his intention not to remove from the city or county prior to the next general election.

On the other hand, remittance of the poll tax by the State elector need not be accompanied by any express representation whatsoever of present residence. No affirmative proof has to be adduced that it has continued uninterrupted since his original registration. Thus the State elector's residency is accepted as unbroken from the date of his registration. No such presumption is accorded the Federal voter. A positive and yearly renewed guarantee of residence is necessary for casting a Federal vote. True, a State elector may be challenged at the polls for insufficient residence, but this is a rare and optional practice.

These differences, while denied by the defendants, are urged as a distinction only in the means of proof of residence and are said not to be a variance in qualifications. The argument is that the poll tax payment requires all that the certificate requires. This view cannot stand against the obvious fact that the payment of the poll tax does not entail a procedure which is trustworthy in vouching residence. That the tax payment will be accepted in satisfaction of residential requirements even in a Federal election, despite its almost total deficiency as evidence of residence, reveals the certificate as an independent or superadded qualification.

We think the 1963 Acts do add a distinct qualification. The excess of exactions in themselves constitute a special qualification. But whether the 1963 Acts delineate another qualification or merely increase the quantum of necessary proof of residence, they unreasonably burden the duty of the Federal elector beyond that of the voter for the House of Delegates. This overburden, if not itself a separate qualification, is an increased qualification. The extra obligation offends the Federal Constitution by tasking the voter in an election for President, Vice President and Congress beyond what is asked of the elector in the choice of members of the House of Delegates. Art. I, § 2 and 17th Amendment.

Contra, we are cited to Southerland v. Norris, 74 Md. 326, 22 A. 137 (1891), and Pope v. Williams, 98 Md. 59, 56 A. 543, 66 L.R.A. 398 (1903), aff'd, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904). These cases sustained Maryland statutes treating with removal of persons from the State, their return and the entry of new residents. They sought proof of resumption or inception of residence. But after the voter became qualified generally, neither case is authority for saddling a voter in a Federal election, in order to maintain his status, with a step or task beyond that required of a voter in a State election.

II. For non-joinder of indispensable parties the defendants move the dismissal of this action. The argument is that as the local electoral board, the registrars and clerks of court are the officers charged with the responsibility for the conduct of elections, no such declaratory or injunctive decree as prayed in the complaint would be effective in the absence of these officers. Only the State Board of Elections and the appropriate treasurer are named defendants. The proposition is unsound.

Poll taxes are paid to, and certificates of residence are filed with, the treasurer. He certifies to the election officials the lists of poll taxes paid and certificates filed. The Board prescribes and furnishes the certificates. Without the acts of these officers no election could proceed. They are sufficient parties for the aims of this suit.

III. Plaintiffs construe the 24th Amendment as erasing payment of poll taxes as a prerequisite to voting for members of the Virginia House of Delegates. We do not follow the reasoning of the plaintiffs to this end, and cer-

tainly do not subscribe to the conclusion. The legislative history of the joint resolution of the Congress eventuating in the 24th Amendment reveals beyond peradventure that the Amendment was not intended to outlaw poll taxes in any election other than a primary or general Federal election. House Report No. 1821, June 13, 1962, U.S.Code Cong. & Ad.News, pp. 4033, 4037, 87th Cong., 2d Sess. (1962). The very phraseology of the Amendment precludes any other interpretation. If the Congress had intended to illegalize the poll tax in all elections, it would have so declared in the 24th Amendment, as it did in the 15th and 19th, where comprehension of all elections was accomplished quite simply by omission of any designation of the elections affected. For the 24th Amendment an explicit designation was included as a limitation of its force to those elections named.

Furthermore, the poll tax as a condition to the exercise of the franchise in State elections has been constantly upheld. Breedlove v. Suttles, 302 U.S. 277, 58 S.Ct. 205, 82 L.Ed. 252 (1937); Saunders v. Wilkins, 152 F.2d 235, 237 (4 Cir. 1945), cert. denied, 328 U.S. 870, 66 S.Ct. 1362, 90 L.Ed. 1640 (1946); Butler v. Thompson, 97 F.Supp. 17 (E.D. Va.1951), aff'd per curiam, 341 U.S. 937, 71 S.Ct. 1002, 95 L.Ed. 1365. Indeed, the very fact that the Congress deemed a constitutional amendment necessary to abolish it in Federal elections demonstrates that such a tax is not in itself unconstitutional.

IV. That the Constitution of the United States requires the restraint upon the State which we now enforce, and the reason for it, are declared in that great commentary, the Federalist, No. 52, in this way:

"* * * I shall begin with the House of Representatives.

"The first view to be taken of this part of the government relates to the qualifications of the electors and the elected.

"Those of the former are to be the same with those of the electors of the most numerous branch of the State legislature. The definition of the right of suffrage is very justly regarded as a fundamental article of republican government. It was incumbent on the convention therefore, to define and establish this right in the Constitution. To have left it open for the occasional regulation of the Congress, would have been improper for the reason just mentioned. To have submitted it to the legislative discretion of the States, would have been improper for the same reason; and for the additional reason that it would have rendered too dependent on the State governments that branch of the federal government which ought to be dependent on the people alone * * *. It must be satisfactory to every State because it is conformable to the standard already established, or which may be established by the State itself. It will be safe to the United States, because, being fixed by the State constitutions, it is not alterable by the State governments, and it cannot be feared that the people of the States will alter this part of their constitutions in such a manner as to abridge the rights secured to them by the federal Constitution."

An order will be entered declaring invalid, for the reasons stated, so much of the 1963 Acts—Chapters 1 and 2, approved November 21, 1963, of the Acts of the General Assembly of the Commonwealth of Virginia, Extra Session 1963—as requires the filing of a certificate of continuing residence six months before a general election as a prerequisite to the right of a person otherwise qualified to vote in a primary or general election for President or Vice President, or for Senators or Representatives in Congress, and enjoining the defendants, their agents, servants and employees from requiring compliance with this part of the Acts.

The order will be suspended, however, for 30 days to allow the defendants, if they be so advised, to appeal to the

Supreme Court of the United States, but the suspension shall thereafter cease unless the Supreme Court, or one of the Justices thereof, shall in the interval enlarge the suspension. No bond shall be required of the defendants to perfect the appeal or to obtain the suspension.