COMMERCIAL CREDIT CORPORATION, APPELLANT, v. EDWARD C. COOVER, RESPONDENT.

Submitted February 9, 1925—Decided May 18, 1925.

1. A person who signs a document, the contents of which he has the ability and opportunity to ascertain, and for the execution of which he receives a consideration, cannot relieve himself of the obligation that binds men by the import of documents signed by them. merely by showing that solely by reason of his own negligence he failed to acquaint himself with the contents thereof before executing it.

2. Whatever puts a party on inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding.

3. Defendant purchased a motor car of a local dealer on the installment plan and executed documents plainly indicating that the seller's interest in the contract, and note was to be assigned to plaintiff, as, in fact, it was. A few days later the original seller, without returning or producing the papers signed by defendant, persuaded him to close out the sale for cash at a re-

> duced figure, which he did without insisting on the return of his papers or ascertaining definitely where they were, though informed that they were "going through," or making any inquiry except from the local dealer. Immediately after giving his check he received notice from plaintiff of the assignment, but did nothing either to stop payment or come to an understanding with plaintiff. *Held*, that he was charged with knowledge of the assignment at the time he gave the check.

On appeal from the Bergen Circuit Court.

For the appellant, *Harry Green.*

The opinion of the court was delivered by

PARKER, J. This case was submitted on briefs, and as no brief was filed for the respondent, has been considered on the appellant's brief alone. The appeal is by plaintiff from a judgment for defendant rendered on the adverse verdict of a jury. The substantial ground of appeal is that the trial court erred in refusing to direct a verdict for the plaintiff.

The suit is in replevin for a motor car, and plaintiff's right to the property is rested on the seller's assignment of a conditional bill of sale. Such right has been recognized in this court. *General Motors Acceptance Corp.* v. *Smith, ante,* p. 154.

The defense, stated in general terms, was that before defendant had notice of the assignment to plaintiff of the conditional bill of sale and the note accompanying the same, the conditional sale was changed to an absolute one by defendant paying to the original seller (Wimple Auto Company, Inc.) a lump sum in full satisfaction of all moneys due or to grow due under the contract. The trial court considered the question of notice to be one of fact, and left the case to the jury with the instruction to find for the plaintiff or defendant according to their finding, whether defendant received notice of the assignment after or before he made the payment to the Wimple corporation.

It appeared in the evidence that after defendant had signed the installment contract and note, and a "purchaser's

statement" accompanying the same, on August 3d, 1923, and after he had received the car a few days later, he was visited at his home on Friday, August 17th, in the morning, by one Lester, an officer or manager of the Wimple company; and that Lester suggested that defendant could save some money by paying all cash at that time. As a result, defendant gave Lester his check for an amount considerably less than the total named in the installment contract, and Lester promised him an absolute bill of sale, which was not delivered until some time in September. At the time the check was given, defendant did not receive back his installment contract or note (both of which had been assigned to plaintiff almost immediately upon their execution on August 3d), nor, so far as appears, any writing whatever. According to defendant's testimony, he then proceeded to examine his mail, and found in it a notice from plaintiff stating that plaintiff held the contract by assignment from the Wimple company, and demanding that all payments be made to it.

If the case were to turn upon the question whether this letter in the mail was read before or after the check was given, it may possibly have been correct to refuse a direction, although there is much to be said for the view that, as the check was not collected until the following Monday, it was the duty of defendant to recall it, or stop payment until the matter could be investigated, promptly upon reading plaintiff's letter. But there is another ground of reversal which, after careful consideration, seems to us impregnable, viz., that on the undisputed facts of the case defendant was charged with such knowledge as put him on inquiry touching the rights of the Wimple company to negotiate any different contract from the original one, and especially to receive payment of the money; and that any such reasonable inquiry would have discovered the assignment beyond any peradventure.

In the first place, the very face of the papers that he signed charged him with knowledge that an assignment was contemplated and intended. His testimony is a little uncertain as to whether he read them all through, but there is no

intimation of any misrepresentation as to their contents, and hence he was bound by their terms. *Williams* v. *Leisen,* 72 *N. J. L.* 410; *Alexander* v. *Ferguson,* 73 *Id.* 479; *Hegedus* v. *Thomas Iron Co.,* 94 *Id.* 292. A reading of the papers discloses that the installment contract is headed "Commercial Credit Corporation, Form A," and that it contains the stipulation that "the term seller shall include persons or parties to whom this contract may be assigned." To this contract is appended a "purchaser's statement," which defendant was to fill out and sign, and which he did sign. This is addressed to the "seller," and begins thus: "For the purpose of securing credit from you in the purchase of the motor vehicle mentioned in the contract on the reverse side hereof, and in order that you may sell to or discount with Commercial Credit Corporation the note mentioned therein, undersigned makes the following representations." Then follow some filled blanks, and at the end occurs this clause: "You and/or Commercial Credit Corporation are authorized to correct patent errors in said contract and other papers executed by undersigned in connection therewith." (Signed) "Edward C. Coover." Then follows the printed assignment dated the same day and executed by the Wimple company, whether then or later is not clear. The installment note, to the order of the Wimple company, calls for twelve payments of $87.62 each, "payable at the office of Commercial Credit Corporation, New York, N. Y."

The above constitute intimations rather too plain to be ignored, that plaintiff either then had, or was to have, some interest in the subject-matter as payee or otherwise, which defendant was required to respect. But this is far from all. He admits in one place that he presumed Lester would turn over *his check* to the plaintiff, and says that when he gave the check he asked for his note and did not get it; and then, or perhaps later, asked the Wimple people why he did not get the note, and was told it "had forty-five days to go through the—each end of the business; it could not be done in less time." Through what were the papers to go if it were purely

a Wimple affair? Defendant was no inexperienced youth; he was a business man sixty-three years old and somewhat deaf, though, perhaps, not so suspicious as people hard of hearing often are. He had been in business between forty and fifty years. It is rather inconceivable that the average business man will cash his own note without insisting on its delivery back to him.

Not only did defendant make no inquiry before the notice of August 17th, but he made no effective inquiry afterwards, and while he could, in all reasonable probability, have protected both himself and plaintiff. He did not stop his check; he did not call up Lester, but went away over Sunday; he did not advise plaintiff that he had made the new arrangement; in fact, he ignored plaintiff entirely and contented himself with asking Lester later on what it all meant, and accepting his suggestion to pay no attention to the plaintiff, and that it was all right.

These facts, undenied, disclose a situation in which defendant was put on inquiry and in which any reasonable inquiry in the proper quarter would have developed the facts. Under those conditions he was chargeable as though he knew. *Hoy* v. *Bramhall,* 19 *N. J. Eq.* 563; *Gale* v. *Morris,* 30 *Id.* 285; *Vredenburgh* v. *Burnet,* 31 *Id.* 229, 233; *affirmed,* 34 *Id.* 252; *Ogden* v. *Delaware R. and A. R. R. Co.;* 80 *Id.* 191, 197. There was some claim that the Wimple company, or Lester, acted as plaintiff's agent in settling for cash. But that raises at once the question of the powers of an agent to alter a written contract, and if the debtor has knowledge of any fact which should lead him to doubt the general powers of an agent of his creditor, it is his duty to make reasonable inquiry into the character of the relations between them before he takes a release of the debt executed by the agent alone. *Smith* ads. *Perry,* 29 *N. J. L.* 74.

We consider that there was no disputed question of fact determinative of defendant's liability, and that the court should have directed a verdict for the plaintiff. Let the judgment be reversed to the end that a *venire de novo* issue.

·. *For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TREN-
CHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH,
CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK,
McGLENNON, KAYS, JJ.   16.