## CARRIE SINSKO *v.* A. WEISKETTEL & SONS COMPANY.

[No. 70, October Term, 1932.]

*Decided January 13th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Abram C. Joseph* and *Roszel C. Thomsen,* with whom was *Daniel C. Joseph* on the brief, for the appellant.

*Edward L. Ward,* with whom was *Preston A. Pairo* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This case grows out of a claim, on behalf of herself and her minor children, filed by the appellant with the Industrial Accident Commission for the death of her husband, Joseph Sinsko, who was employed as a sand blaster by the appellee. The commission disallowed the claim. On the record sent up from the commission, two issues were submitted to the jury, viz.: (1) Did J. Sinsko, deceased, sustain an accidental injury arising out of and in the course of his employment? (2) Was the death of J. Sinsko the result of an occupational disease incident to his employment?

It appears from the evidence that decedent worked for appellee over sixteen years in the sand blast room, a room about ten by twelve feet, and about eight feet high. The vice-president of the company testified that the company always procured the latest and most approved protection devices for its employees. The stepson of decedent testified that "the sand is forced by a hundred pounds of air, and he uses a gun to clean the rusty tubs and it produces dust in this room. He has to use the sand to clean out the tubs. I

worked down there at that time when he started in 1916. There was only one fan on the side, which did not draw enough dust out of there. He would inhale a lot of dust. It is not the same condition as the outside because it is always full. He complained about seven years, I think. * * * He asked the company to send him to the doctor and they did, but he could not find anything wrong at that time, he went to the company's doctor and reported it and the doctor told him he could go to work. He kept on working and gradually got worse. He got so bad off he could not breathe any more and he had to give up his job. Then he went to his own doctor, Dr. Helfgott. Dr. Helfgott examined him and told him he had this pneumonoconiosis"; that later Dr. Mohr, the company's doctor, examined him and said he had tuberculosis, and that he should go to a sanatorium. He died in the State Sanatorium on January 5th, 1930. Dr. Sax, an X-ray specialist, a witness for claimant, testified that decedent had pneumonoconiosis, which he described as "a condition of the lung which is caused by inhaling a foreign substance, dirt, particles, sand particles, coal particles. It is usually occupational in variety due to the patient being exposed to it, and this causes in the lungs an irritative process which leads to an infiltrated fibrosis of the lung." Dr. Nathan J. Helfgott, a witness for claimant, testified: "It was pneumonoconiosis or occupational disease." Other doctors, offered by defendant, testified that deceased had tuberculosis. John Sinsko, a witness for claimant, testified: "Sand blasting work is a pretty good paying job, but it will ruin your health, when you start to work there. You have to get used to that. And still those jobs down there are the most sought of jobs. Work several months and quit." Witness said he quit, "because I knew it wasn't healthy to work there."

The court granted defendant's two prayers, the first of which directed the jury to answer "No," to the first issue and "Yes" to the second; and the second prayer instructed the jury that there was no evidence legally sufficient to show that the disease from which the decedent died was the result

of an accidental injury arising out of and in the course of his employment, and that their answer to the second issue must be "Yes." The court refused claimant's prayer. This appeal is from the ruling of the court on the prayers, which constitutes the bill of exception, and from the refusal of the court to permit claimant to introduce the testimony of her witnesses to be given in person in open court in the presence of the jury, constituting the first, second, and third bills of exception.

Claimant offered to prove by one of these witnesses, who had not testified before the commission, that the protection devices used by appellee were ineffective, while there were effective devices used by others in the same business.

The purpose of the first three bills of exception is to have the court reconsider its decisions in *Thomas v. Pennsylvania R. Co.*, 162 Md. 509, 160 A. 793, and *Celanese Corp. v. Lease*, 162 Md. 587, 160 A. 801. After careful consideration, we held in those cases that the Act of 1931, ch. 406, amending section 56 of article 101 of the Code, limits the evidence which may be considered by the jury to that contained in the record made by the commission or in a stipulation of the parties. On further reflection we see no reason to depart from the conclusion there reached. The sole remaining question is: Was there error in the ruling as a matter of law that the disease from which the decedent died was an occupational disease, and therefore not the result of an accidental injury? This is the effect of the refusal of claimant's prayer and the granting of defendant's prayers.

In our opinion there was no error. This case is ruled by *Slacum v. Jolley*, 153 Md. 350, 138 A. 244; *Miskowiak v. Bethlehem Steel Co.*, 156 Md. 690, 145 A. 199; *Gunther v. Sharp & Dohme*, 159 Md. 438, 151 A. 134; and *Cambridge Mfg. Co. v. Johnson*, 160 Md. 248, 153 A. 283. They are all distinguishable from *Victory Sparkler Co. v. Francks*, 147 Md. 368, 128 A. 635, in that the disease in the latter case was held not to have resulted from the occupation as a necessary or usual consequence, but from the negligence of the employer. *Bethlehem Steel Co. v. Traylor*, 158 Md.

116, 148 A. 246, relied on by the appellant, is not in point. That case did not turn on the question of occupational disease.

In the present case, all the evidence shows it was an occupational disease, and there is no evidence of negligence on the part of the appellee.

It is true Dr. Bridges said: "The fact is that sand blast people are usually taken care of these days, there is no reason why they should get any more dust or dirt in the lungs than they would from the streets, and therefore, I cannot conceive of how the position of sand blasting should have any effect on this condition."

Appellant argues that this expression furnishes some evidence that appellee must have been negligent; one of appellant's witnesses having testified that there was dust and sand in appellee's establishment which caused witness to leave. But Dr. Bridges was testifying as a witness for appellee, and endeavoring to prove that decedent died of tuberculosis and not from any disease connected with his employment. We think the expression referred to cannot be regarded as anything more than an assumption by him in support of his argument. It certainly is not substantive evidence of the fact assumed.

*Judgment affirmed, with costs.*