## MAYOR AND CITY COUNCIL OF BALTIMORE *v.* AMIL PERTICONE

[No. 40, October Term, 1936.]

*Decided January 13th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*M. Henry Goldstone* and *J. Francis Ireton, Assistant City Solicitors,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellant.

*Paul Berman* and *Harry K. Lott,* with whom were *Louis Silberstein* and *Silberstein & Lott* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Superior Court of Baltimore City on the verdict of a jury, reversing a decision of the State Industrial Accident Commission, by which the claim of Amil Perticone, employee,

against the Mayor and City Council of Baltimore, employer and self-insurer, for compensation was disallowed. The claim in question arose upon the employee's contention that on May 13th, 1935, he sustained an accidental personal injury arising out of and in the course of his employment by appellant while working as a laborer in its water department and assisting in pulling a meter vault from the ground on Eierman Avenue, at which time, while standing upon the curb near the vault and assisting others in pulling it from the ground, his foot slipped, and he immediately felt a sharp pain in his stomach. This, he stated, happened about 2:30 in the afternoon, but he made no statement to his fellow workmen or to the foreman of the gang concerning it, and continued working with them for an hour thereafter, when the job was finished. He then got into the truck with other workmen, and, after riding some distance, took a street car for his home, where, upon arrival, he was nauseated, able to eat but little, none of which he retained; that shortly after arrival at his home he noticed one lump on either side of his stomach, although previous to this time he had never had hernia and had never worn a truss. On the following day he went to the Union Memorial Hospital, but stated that, as he had no money, he did not tell them he had any work, nor that he sustained the injury while working. Getting no treatment there, he next went to the Supervisor of City Charities, where he secured a pass which admitted him to the City Hospitals, and on the following day underwent an operation for inguinal hernia. He left the hospital on the last day of the month, and on June 13th following filed claim for compensation, which was subsequently heard by the commission, the claimant and employer both being present and participating, on nine issues as follows:

(1) Whether he sustained an accidental personal injury arising out of and in the course of his employment by appellant. (2) Nature and extent of disability. (3) Average weekly wage. (4) Whether he gave notice to his employer of his injury within the time prescribed

by law. (5) Whether he filed his claim within the time prescribed by law. (6) Did the hernia appear suddenly? (7) Was it accompanied by pain? (8) Did it immediately follow his injury? And (9) did it exist prior to the injury?

The commission found for the employer on the first, sixth, seventh, and eighth issues, and as to the third issue found his average weekly wage was $14.07, on the fourth issue that the claimant did give notice to his employer of his alleged accidental injury within the time prescribed by law, and likewise found for the claimant on the fifth issue, but as to the ninth issue found that the hernia existed prior to the alleged accidental injury. The second issue was, therefore, not passed upon. The commission accordingly disallowed the claim, and from this action Perticone appealed to the Superior Court of Baltimore City, where the case was tried before a jury on eight issues, which for convenience are designated as follows:

(1) Did the claimant sustain an accidental personal injury arising out of and in the course of his employment on May 13th, 1935, causing hernia? (2) Did the claimant report his injury to his employer within forty-eight hours next following its occurrence? (3) Did the inguinal hernia exist prior to the alleged accidental injury of May 13th, 1935? (4) Did the Compensation Commission excuse claimant for his failure to file his application and the report of his attending physician within thirty days after the beginning of his disability for which compensation is claimed? (5) Did the hernia appear suddenly? (6) Was the hernia accompanied by pain? (7) Did the hernia immediately follow such injury? (8) Did the hernia exist prior to the injury for which compensation is claimed?

The jury's answer to the first, fifth, sixth, and seventh issues was "yes," while its answer to the third and eighth issues was "no." It also, under instruction of the court, answered the second issue "yes." By granting claimant's B and C prayers, the fourth issue was withdrawn from

the jury's consideration for the reason that the employer, not having raised the question of prejudice before the commission, could not raise it on appeal.

The first of appellant's exceptions relates to the court's action in permitting appellee, after he himself had given oral testimony concerning the injury for which he claimed compensation, to introduce, by reading from the transcript made before the commission, the testimony there given by one of his witnesses, the ground for the exception being that claimant must on appeal rely entirely on oral testimony or entirely upon that contained in the transcript made before the commission; but we consider this contention untenable, since chapter 545 of the Acts of 1935, amending and reenacting section 56 of article 101, no longer required the court on appeal to confine its consideration of the case to the record made before the commission, and in this respect restored article 56 to the status it occupied prior to its amendment by chapter 406 of the Acts of 1931. The effect of this legislation was to restore to litigants the right on appeal to have some witnesses give oral testimony and introduce the testimony of others by reading from the transcript made before the commission, which right they enjoyed prior to the 1931 amendment. *Harvey v. Roche & Son,* 148 Md. 363, 366, 129 A. 359; *Savage Mfg. Co. v. Magne,* 154 Md. 46, 139 A. 570.

We now come to the second exception, which relates to the rulings upon the prayers, of which appellee offered four, numbered "Claimant's" A, B, C, and First prayer, which were granted, while appellant offered eleven, numbered "City's A, B, C, D, E, and 1, 2, 3, 4, 5, and 6, of which No. 1 was granted, and the remainder refused. City's A prayer was a general demurrer to the evidence, and, from the testimony of the plaintiff previously quoted, to say nothing of that of his other witnesses, was properly rejected, unless it can be said that there was no evidence in the case from which a rational inference could be drawn by the jury that claimant reported his accidental injury within the time prescribed by law follow-

ing its occurrence. Appellant and appellee, as well as the State Industrial Accident Commission and the Superior Court, treated this requirement of notice as being applicable to the forty-eight hour limitation prescribed by section 36 of article 101 of the Code, as amended by chapter 363 of the Acts of 1931, which provision was admittedly in effect at the time appellee claimed to have sustained his accidental injury; and since, under the great weight of authority, such a statute is generally held to be one of limitation, an amendment to which is not construed so as to affect causes of action already barred and thus revive a lost right of action (37 *Corp. Jur.* page 697, sec. 14; *Dyer v. Belfast,* 88 Me. 140, 33 A. 790; *Garfield v. Bemis,* 2 Allen (Mass.) 445; *Denny v. Bean,* 51 Or. 180, 93 P. 693, 94 P. 503), we feel this interpretation to be correct and will, therefore, consider the forty-eight hour period as applicable in this case. The same statute was first considered by this court in *Lloyd v. Webster,* 165 Md. 574, 169 A. 202, and it was there held that failure to report within forty-eight hours an injury which caused hernia precluded an award of compensation. That case is ample authority for the proposition that notice of the injury must be given within the prescribed period, and it has been held that the purpose of such notice is to enable the employer to have the benefit of an early investigation of the circumstances surrounding the alleged accident. *Dorb v Frederick Stearns & Co. et al.,* 180 App. Div. 138, 167 N. Y. S. 415, 1 W. C. L. J. 227 (N. Y.) ; *Whitmyre v. International B. M. Corporation,* 267 N. Y. 28, 30, 195 N. E. 539; *Northeast Coal Co. v. Castle,* 202 Ky. 505, 260 S. W. 336.

The statute in question prescribes no particular form of notice, and in this respect is similar to the Texas statute, which has been construed to mean that every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have notice of the fact itself. *Stone v. Robinson* (Tex. Civ. App.), 203 S. W. 1132, 1134. See,

also, *Coleman v. Armstrong,* 128 Okl. 87, 261 P. 228; *Commercial Credit Corporation v. Coover,* 101 N. J. Law, 530, 129 A. 187.

Plaintiff himself testified that when, on the morning of May 14th, while in the City Hospitals, he learned he must undergo an operation, he sent his cousin to report his accidental injury to Mr. Catanese, who was in charge of the gang upon which he worked. His cousin, Matthew Perticone, testified that on the same day, after having seen Amil in the hospital, he went to notify Mr. Catanese, Amil's foreman, but did not find him at home. He did, however, see Mrs. Catanese, and reported to her that Amil was in the hospital and had been home sick on the day previous with a strain, and requested her to notify her husband. Mrs. Catanese in turn testified that Matthew came to her house and delivered a message that afternoon, telling her of learning on the morning of that day that Amil was ill and had been sent to the hospital; that when she asked what was wrong, he said he did not know, and did not know to what hospital he had been sent, but he himself was to take the message and report Amil's illness. Her husband, John Catanese, Amil's foreman, testified his wife told him of having received a message from Matthew that Amil had been rushed to the hospital; that he had a pain somewhere in his stomach, and he did not know "whether it was appendicitis or what," but he was taken to the City Hospitals; that it happened "Monday evening or some time," but they did not know what it was. He stated he made no investigation, because a message could be anything, and it did not occur to him that he was being notified Amil's trouble was due to an injury sustained while working. It will be observed that the wife said Matthew's message did not disclose to what hospital Amil was taken, yet her husband states she reported to him he was in the City Hospitals. Upon cross-examination, he was asked: "Did she use the word 'Appendicitis'? A. I won't say for sure now—as a matter of fact they did not know what was wrong at the time the message was delivered."

In view of the dissimilarity of the testimony of the foreman and his wife as to what message they actually received, and considering her denial that she learned the identity of the hospital, while the husband admits she gave him this information, it is evident that the message which Matthew reported to Mrs. Catanese had not only been garbled, but even at the time of the trial on appeal had become rather obscure in their minds, and while the matter is not free from difficulty, it is the opinion of a majority of this court that, in view of these considerations, it cannot be said that the jury could not have rationally concluded that Matthew delivered to Mrs. Catanese the message which he testified to having delivered, and that she in turn gave her husband the same information, for after all it was the province of the jury who heard the testimony of Mrs. Catanese and her husband to judge their credibility and to draw therefrom such rational inferences as were permissible  A contrary holding would, in our judgment, deprive claimant of a liberal construction of the Workmen's Compensation Act and prevent giving to it the most beneficial operation. It, therefore, follows that appellant's general demurrer prayer to the evidence was properly rejected, as was likewise its B prayer, which sought an instruction that there was no legally sufficient evidence to prove that claimant had sustained an accidental personal injury on May 13th, 1935, and the same ruling applies to its C prayer, which was similar to prayer B, but limited the injury to one arising out of his employment.

By its D prayer, the city sought an instruction that as to the second issue the jury's answer should be "no," because there had been offered no legally sufficient evidence to prove that claimant reported his injury to his employer within forty-eight hours next following its occurrence. From what we have said concerning the general demurrer prayer it follows there was no error in the rejection of this prayer.

The city's E prayer sought an instruction that, as a matter of law, notice by claimant to the wife of his fore-

man of an accidental injury resulting in hernia within forty-eight hours next following its occurrence was not notice to the employer within the meaning of the Workmen's Compensation Law. Undoubtedly, the instruction stated abstractly a correct proposition of law, but, in our judgment the granting of such an instruction would have tended to mislead and confuse the jury, and give them the impression that, regardless of whether or not she had received and communicated the message to her husband, this would have been unavailing to claimant, since she herself was not an employee of the city. Its rejection was proper.

Prayer No. 1, granted on behalf of the city, correctly instructed the jury as to the hernia statute contained in section 36 of article 101, and further correctly instructed them as to the weight to be given the commission's decision, and that the burden of proof was upon claimant, and was properly granted. Since its prayers 2, 4, and 5 were covered by its granted instruction, their rejection was proper. Its prayer No. 3 sought an instructed verdict that, since claimant did not report his injury to his employer within forty-eight hours next following its occurrence, their verdict must be for the city. As we have determined that there was sufficient evidence upon this subject to require its submission to the jury, this prayer was properly rejected.

By its sixth prayer, the city asked the court to rule as a matter of law that the evidence in the case showed that claimant did not file the report of his attending physician and his claim for compensation within thirty days after the beginning of his disability, and that such failure to do so was not excused by the State Industrial Accident Commission, and their verdict must be for the city. Since the record contains a stipulation that the claim was not filed with the Commission until June 13th, it was filed one day beyond the thirty-day statutory limit, under the statute as it existed before the limit was extended to sixty days by the amendment enacted by chapter 237 of the Acts of 1935. Since the statute became effective on

June 1st, 1935, it controlled the period of limitations applicable in this case, and there was no error in the refusal of the trial court to grant the city's sixth prayer, which ignored the change in the statute and was based upon the assumption that the period was thirty days.

There remains for consideration the prayers offered by claimant. By his A prayer, the court instructed the jury that, since the city did not appeal from the decision of the Commission finding that claimant reported his alleged accidental injury within the time prescribed by law, their answer to the second issue must be "yes." The decision having been favorable to the city, there was no occasion for it to appeal therefrom, and since the appeal which brought the city into the Superior Court is, by section 56, article 101, from the *decision* of the Commission and not from its findings on issues which influenced its decision, we must, under the authority of *Liggett & Meyers Tobacco Co. v. Goslin,* 163 Md. 78, 160 A. 804, and *Moore v. Clarke,* 171 Md. 39, 187 A. 887, hold that the granting of this prayer was reversible error. By his B prayer, the court instructed the jury that because the city did not raise the question of prejudice before the State Industrial Accident Commission, it could not raise such question on claimant's appeal, and the court would not allow the fourth issue, which attempted to raise the question as to whether the Commission had excused the claimant for failure to file his application and report of his physician within thirty days after beginning of disability, and by his C prayer the jury was instructed that, as neither an affirmative or negative answer to the fourth issue would be material to the ultimate determination of the case, the issue would not be granted and the jury would not be permitted to consider it. Obviously the B prayer was presented on the theory that the question of prejudice was waived by appellant because it was not raised before the Commission. *Broniszewski v. Balto. & O. R. Co.,* 156 Md. 447, 144 A. 345. However, the requirement of the statute in this respect is that if the employee fails to file the claim within thirty days, but

does file it within one year after beginning of the disability, such delay is a bar unless excused on the ground that the insurance carrier or employer has not been prejudiced thereby or for other sufficient reason. It is therefore difficult to understand how appellant could have more definitely raised the question of prejudice before the Commission than by submission of the fifth issue, which was answered in favor of claimant, but since the action of the Commission in excusing, or failing to excuse, the delay in filing was, like any other question of fact, reviewable on appeal, and the fourth issue, granted in the Superior Court at the instance of the employer, went no further than to submit the question as to whether the Commission had excused the delay in filing, the issue was improper, for whether the Commission had or had not excused the delay and, if so, whether such action was correct or incorrect, were questions which appellant could have raised on appeal by submitting one issue, as to whether the claim was filed within the thirty day period, and another, if the answer to that issue should be in the negative, whether employer and insurance carrier were prejudiced by such delay. *Savage Mfg. Co. v. Magne, supra; Union Shipbuilding Co. v. Praviewski,* 156 Md. 413, 144 A. 339. The issue as presented was improper, and while, for the reasons pointed out, the B prayer was erroneous, appellant was uninjured thereby. It follows that appellee's C prayer was properly granted. There was likewise no error in granting claimant's first prayer, which correctly instructed the jury as to the law which should guide them in answering the issues therein mentioned.

Because of the error mentioned in granting claimant's A prayer, the judgment appealed from must be reversed, and the cause remanded for a new trial.

*Judgment reversed and cause remanded with costs to appellant.*