BEECHWOOD COAL COMPANY ᴇᴛ ᴀʟ. *v.* LUCAS

[No. 67, September Term, 1957.]

250

*Decided January 16, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*J. Howard Holzer, Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, U. Theodore Hayes* and *Ernest N. Cory, Jr., Special Assistant Attorneys General, Thomas B. Finan* and *Leslie J. Clark* on the brief, for the appellants.

*William L. Wilson,* with whom was *Edward J. Ryan* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Allegany County affirming the action of the State Industrial Accident Commission which had awarded the claimant compensation for injuries resulting in total disability from an occupational disease.

William J. Lucas, claimant-appellee, fifty-four years of age, worked in the bituminous coal mines for thirty-four years of which the last six years, ending in February or March, 1955, were in the employ of the Beechwood Coal Company, appellant, or its predecessors. He quit work because of his physical inability to continue resulting from shortness of breath, difficulty in walking and moving around, pains in his chest and discomfort occurring when he lay down to retire every night. He consulted his own physician, Dr. G. J. Richards, on February 15, 1955. Dr. Richards diagnosed his illness as pneumoconiosis, but did not so inform Lucas until after Lucas' return in June from the Golden Clinic at Elkins, West Virginia, to which Dr. Richards referred him. On July 26, 1955, he filed a claim with the State Industrial Accident Commission for compensation for an injury to his lungs which resulted in a permanent disability arising out of and in the course of his employment by the appellant. A hearing was held before the Medical Board, and on March 20, 1956, that body issued its report finding that the claimant had not contracted an occupational disease within the terms of the occupational disease statute (Code, 1951, Art. 101, Secs. 21 *et seq.*). Thereafter, a petition for review having been filed by the claimant, the record before the Medical Board was reviewed by the Commission which on August 16, 1956, reversed the findings of the Board and found that the claimant had contracted an occupational disease within the meaning of the law.

Both sides agree that there are but two issues before this Court on appeal. The first one is, whether or not the State Industrial Accident Commission had the statutory authority to reverse the findings of the Medical Board. The second one (assuming that such authority did in fact exist) is, whether or not there was sufficient evidence in the case to

sustain the Commission's reversal of the findings of the Medical Board. We shall deal with these issues in the order stated.

From June 1, 1951, through May 31, 1955, that portion of Article 101, Section 28, which is pertinent here, read as follows:

> "* * * In the event that a petition for review by the State Industrial Accident Commission of the findings and report of the Medical Board has been filed, as herein provided, the State Industrial Accident Commission shall review the proceedings, findings and report of the Medical Board, and upon the record thus made shall render its decision or award upon all issues referred to the Medical Board, *provided, however, that upon such review the findings of the Medical Board upon all medical questions shall be presumed to be correct and such findings shall not be set aside or reversed if there is legally sufficient evidence in the record to support such findings."*

(Emphasis supplied).

The proviso at the end of this Section which we have set out here in italics was added by the Legislature by Chapter 287 of the Acts of 1951, which became effective on June 1st of that year. It remained unchanged until June 1, 1955. On that date Chapter 82 of the Acts of 1955 became effective; it simply restored the statute to what it had been prior to June 1, 1951, by deleting the proviso added on that date.

The first question thus is, whether the law in effect at the time of the injury or disability is controlling or whether the law as it existed at the time of the hearing before the Medical Board and of the review of the record by the Commission should govern. The appellants' contention is that the former statutory requirement that the Commission should be bound by the findings of the Medical Board which relate to medical matters was a substantive right and, hence, that any legislative amendment changing this rule should not be construed to operate retrospectively. Therefore, they con--

tend, the law in effect at the date of disability should govern, and the subsequent change should not deprive them of the substantive right which they say accrued to them at the date of disability. The trial judge agreed with this contention, basing his view upon *Big Savage Refractories Corp. v. Geary*, 209 Md. 362, 121 A. 2d 212; but he held the date of disability to be the time at which the claimant acquired knowledge of the exact nature of his ailment, which in this case he found was after June 1, 1955. Therefore, he decided that the statute as amended in 1955 should govern.

We do not agree that the date of the injury or disability is controlling as to the effect to be given the findings of the Medical Board, or that the decision in the *Big Savage Refractories* case, *supra,* indicated a view that Chapter 82 of the Acts of 1955 altered substantive rights. In that case the hearing before the Medical Board took place in December, 1954, its findings were made on February 15, 1955, the case was heard by the Commission on April 1, 1955, and was decided on May 3, 1955. The Commission reversed the Board on one of its medical findings. Chapter 82 of the Acts of 1955 was approved on March 24, 1955, but it did not become effective until June 1, 1955. This Court held that the prior law, Chapter 287 of the Acts of 1951, was in effect at the time of the Commission's hearing and decision and was controlling as to the Commission's power to review the findings of the Medical Board and that Chapter 82 of the Acts of 1955 "in no way governed the review by the Commission on May 3, 1955, when it passed its order because it was not in effect at that time." (See 209 Md. 368, 372.) It was also held that although the 1955 Act had become effective before the case was decided by the Circuit Court on appeal from the Commission, "the review of the court is limited to a review of the evidence before the Commission based upon the law in effect at that time." "That time" refers to the time of the review by the Commission. (See 209 Md. 372.) We think that the implication of that case is against the appellants' contention.

A general rule of statutory construction is that, in the absence of a clear manifestation of a contrary intent, a statute

which adversely affects substantive rights will be assumed to operate prospectively rather than retrospectively. *Johnson v. Johnson,* 52 M.d. 668; *Ireland v. Shipley,* 165 Md. 90, 166 A. 593; *Kelch v. Keehn,* 183 Md. 140, 36 A. 2d 544. On the other hand, where the effect of the new statute is not to impair existing substantive rights but only to alter the procedural machinery involved in the enforcement of those rights, such legislation is usually construed as operating on all proceedings instituted after its passage, whether the right accrued before or after that date. *Ireland v. Shipley, supra; Kelch v. Keehn, supra;* 82 C. J. S., *Statutes,* Secs. 421, 432.

As to the legislative intent, we note that Code (1951), Art. 101, Sec. 21 (originally enacted by Ch. 465 of the Acts of 1939) after providing, subject to certain conditions, for compensation to employees or their dependents for disability or death resulting from an occupational disease as if such disability or death were the result of an accidental injury, "except as otherwise provided in Sections 21 to 29 hereof", goes on to say: "and the *practice and procedure* prescribed elsewhere in this Article shall apply to proceedings for compensation for such diseases, except as in said Sections 21 to 29, and Sections 53, 57 and 68, as hereby amended, otherwise provided." (Emphasis supplied.) The words "as hereby amended" were included in the original occupational disease compensation statute (Acts of 1939, Ch. 465), and what are Sections 21 to 29 in the 1951 Code are derived from that Act. Section 27, as enacted in 1939 and continuously since then has provided for initial hearings before the Medical Board in occupational disease cases and Section 28 has confined the Commission to the record before the Medical Board in reviewing issues referred to and reported upon by the Board. Section 53 was so amended in 1957 as to render the cross-reference to it no longer appropriate, but from 1939 to 1957 it prescribed a shorter period of limitations for filing an application to change or modify a final award in occupational disease cases than in other cases. Section 57, dealing with court review, as amended in 1939 and ever since that date, has provided that findings of fact made by the Commission in occupational disease cases shall not be

reviewed by the court or submitted to the jury. Also since 1939, Section 68 (15) has contained definitions of "disablement" and "disability," as used in Sections 21, 26, 27 and 28 of Article 101, and a provision that "disablement and disability in cases involving occupational diseases shall be determined by the Medical Board as herein provided in Sections 21-29 of this Article." (All of the above references to section numbers are to the 1951 Edition of the Code.) From the above Sections we think it reasonably clear that the General Assembly regarded the provisions relating to hearings and findings by the Medical Board which are here involved as procedural.

In *Thomas v. Pennsylvania Railroad Co.,* 162 Md. 509, 160 A. 793, the Court held that an amendment to the Workmen's Compensation Law (Acts of 1931, Ch. 406) requiring court review of the Commission's actions to be confined to and based upon the record made before the Commission (or upon a stipulation of facts made by the parties) was applicable, even though the appeal by the claimant from the Commission's action had been entered before the effective date of the amendment and was heard several months after the effective date. The Court was confronted there with much the same contention that is raised here by appellant, *i. e.,* that the amendment worked a substantive change in the law adversely affecting rights which had already accrued to the claimant. The Court, in an opinion by Chief Judge Bond, held that the provision was "merely procedural", and affirmed the action of the lower court in refusing to admit any testimony at the trial from the witnesses whom the claimant had produced to testify in his behalf. Judges Offutt and Digges dissented on the construction of the statute. Judge Parke expressed his agreement with their dissent and also dissented on the ground that the majority construction of the statute constituted "a grave departure from precedent and authority to hold that a jury trial, as known to the common law, is no longer an indispensable prerequisite to the constitutionality of the Workmen's Compensation Law." The majority took the view that the Constitution did not require that any jury at all should be allowed (162 Md. 514), and also held that

256

it was not unconstitutional to give the statute a retrospective operation, stating (162 Md. 513) that "it deprives the appellant of no property or rights in an existing contract, and no right of action or ground of recovery. She is not denied the benefit of proof of the facts. The provision is merely procedural, * * *." The *Thomas* case was followed in *Celanese Corporation v. Lease,* 162 Md. 587, 160 A. 801 (which was referred to in the *Thomas* case, and the opinion in which was filed a few days later), and it was adhered to in *Sinsko v. A. Weiskettel & Sons Co.,* 163 Md. 614, 163 A. 851. (The statute upon which these cases were based was amended in 1935.)

In this case, as in the *Thomas* case, the repealing statute contains no saving clause respecting existing appeals. Judge Bond there said (162 Md. 513): "The words [of the amended statute] are comprehensive and admit of no exception. They constitute the only provision for appeal now in force, the former provision having been repealed in the enactment of this one, without any saving clause respecting existing appeals; and the appellant can have only the existing law applied to govern her appeal." Among the authorities cited by Judge Bond was *Southerland v. Norris,* 74 Md. 326, 328, 22 A. 137, in which Judge McSherry said: "The right to have one's controversies determined by existing rules of evidence is not a vested right. These rules, like others affecting remedies, must at all times be subject to modification and control by the Legislature." See also, *State v. Jones,* 21 Md. 432 (upholding a statute shortening the period of limitations), and *Elliott v. Elliott,* 38 Md. 357 (involving a statute authorizing a court granting a divorce to impose a restriction upon remarriage of the offending party), both of which are cited in the *Thomas* case.

Our views are reinforced by the special rule of statutory construction that rights which are of purely statutory origin and have no basis at common law are wiped out when the statutory provision creating them is repealed, regardless of the time of their accrual, unless the rights concerned are vested. *Horack, Sutherland Statutory Construction,* 3rd Ed., Vol. 1, Secs. 2043, 2044, 2045. *State v. American Bonding*

*Co. of Balto.*, 128 Md. 268, 272, 273, 97 A. 529; *Dal Maso v. County Commrs.*, 182 Md. 200, 206, 34 A. 2d 464. It is difficult to perceive how a "right" to have the Medical Board's findings in an undetermined case conclusively presumed to be correct can be deemed a vested right, particularly in a case such as this, which had not even been submitted to that Board while the statute relied upon was still in force.

A clear example of how different kinds of rights may be affected by an amendment of the law is to be found in *Baltimore v. Perticone*, 171 Md. 268, 188 A. 797. There an employee was injured on May 13, 1935. The Workmen's Compensation Law was amended in two particulars affecting the case by Ch. 545 of the Acts of 1935, which became effective on June 1, 1935. It was held that the provisions of the law in effect at the time of the happening of the accident prescribing a 48-hour period for the giving of notice to the employer, which were important to the employer in enabling a prompt investigation of the accident to be made, were controlling. (This in fact was not disputed.) It was also held that the 1935 Act which extended the time for filing the report of the employee's physician from thirty to sixty days after the accident was controlling, where the original period had not expired when the new Act took effect.

It follows from these views that it makes no difference with regard to the applicable law whether the date of disablement should be considered as February 1, 1955, February 15, 1955, when his condition was diagnosed by his own doctor, or some date subsequent to June 1, 1955, when the claimant was advised by the Golden Clinic as to the nature of his disease.

We turn next to the appellants' second contention—that there was no legally sufficient evidence to support the Commission's action in reversing the Medical Board's finding that the claimant had not contracted an occupational disease within the meaning and terms of the Occupational Disease Law. The Board's finding on this question seems to have been based upon the Board's conclusion that the claimant did not have the specific pulmonary disease known as silicosis. The Commission stated that "after due consideration

of all the evidence and facts in the case, the Commission has concluded to reverse the decision of the Medical Board and finds \* \* \* that the claimant contracted an occupational disease within the meaning and terms of the Occupational Disease Law; \* \* \*." The Commission did not trouble to state the reason or reasons for its conclusion. Judge Harris, in the Circuit Court, described the record as "contradictory, confusing, incomplete and, of course, unsatisfactory." We share his views. The law makes no provision for remanding the case to the Commission for the purpose of making a more understandable record. It is not our province to weigh the evidence, and the statute (so far as it can do so) requires the courts to accept the findings of fact of the Commission. There is, however, an implicit condition—that there must be some evidence or sufficient evidence to sustain the findings. *Bethlehem-Sparrows Point Shipyard, Inc. v. Bishop,* 189 Md. 147, 55 A. 2d 507; *Big Savage Refractories Corp. v. Geary, supra; Duncan v. McNitt Coal Co.,* 212 Md. 386, 129 A. 2d 523.

We accordingly search the record to ascertain if there is any basis upon which the finding of the Commission that the claimant had contracted an occupational disease may be sustained.

In brief, there is evidence that the claimant had worked as a miner in coal mines for many years, including about five years in the mine now operated by the defendant coal company (he had been a partner in the business while working in the mine and became president of the mining company following the incorporation of the business in April, 1954, and held that office until after he became disabled in 1955), that while working in the defendant's mine he had been exposed to inhalation of some silica dust, that he had contracted "Coal Miner's pneumoconiosis", that his exertional dyspnea had progressed to the point where he became dyspneic after climbing one flight of stairs, that it was probable that his pneumoconiosis would grow progressively worse and that it was "entirely possible that this man should be considered totally and permanently disabled." Most of the medical evidence above summarized came from the Golden Clinic, at

Elkins, West Virginia, and from a doctor attached to that Clinic, and was based upon examinations made while he was a patient at Elkins from May 24 to June 25, 1955. There was further evidence from the claimant himself that he was disabled; and the diagnosis of pneumoconiosis was also made by the claimant's own physician in February, 1955. That doctor referred the claimant to the Golden Clinic.

There is no testimony defining pneumoconiosis or explaining its relationship to silicosis. A definition of pneumoconiosis (or pneumonoconiosis) contained in *Cecil and Loeb's Textbook of Medicine,* 18th Ed. (1951), which was cited by the trial court, described it as "a generic term comprising all of the chronic fibrous reactions arising in the lung as a result of the prolonged inhalations of excessive quantities of injurious mineral dusts, such as those of sand, granite, flint, asbestos." The definition further states: "Many of the pneumonoconiosis are scarcely to be considered as diseases, since they may be present without producing symptoms or impairing physical efficiency, * * *. On the other hand, dusts containing high concentrations of finely divided silica produce serious forms of pulmonary fibrosis of great medical and economic importance (silicosis)."

The appellants rely upon a definition of pneumonoconiosis found in *Gray's Attorneys' Textbook of Medicine,* 3rd Ed., Vol. 2, Sec. 132.02, which refers to studies which it says "disproved the old contention that pneumoconiosis consisted of mechanical irritation of the lung, and the conclusion was soundly reached that poisonous substances when inhaled produce definite lung damage, whereas innocuous materials lead only to negligible symptoms * * *." The author then adds: "The older teachings of pneumonoconiosis have not yet been accepted by all doctors, and we sometimes find anthracosis classified thereunder. Similarly, silicosis is so described, whereas in reality it is a disease unto itself, consisting of chemical poisoning from silica, followed by scar tissue formation in the destroyed areas."

*Maloy's Medical Dictionary for Lawyers,* 2nd Ed., 1951, defines pneumoconiosis as "[a] disease of the lungs caused by the inhalation of fine particles."

Section 68 (14) of Article 101 of the Code (1951) defines silicosis as "the characteristic fibrotic condition of the lungs caused by the inhalation of silicon dioxide ($SiO_2$) dust." This seems in accord with medical definitions contained in Maloy's and in Cecil and Loeb's works above referred to.

From the works quoted there seems to be some difference of medical opinion as to whether silicosis should or should not be classified as a form of pneumonoconiosis, but whether its ill effects are due to mechanical or chemical causes does not seem important under the language of our statutes. Also, we think it reasonably clear that pneumoconiosis is a pulmonary lung disease, and we do not believe it unreasonable, in what seems to be the existing state of medical definition, to consider silicosis as includable within the generic term "pneumoconiosis." It was the view of Judge Harris in the Circuit Court that silicosis was a form of pneumoconiosis and that it was the only form of pneumoconiosis which a coal miner could have.

We think that the medical definitions which treat silicosis as a form of pneumoconiosis have received at least some tacit acceptance by this Court in the case of *Sinsko v. A. Weiskettel & Sons Co.*, above cited. That case, decided in 1933, arose before our Occupational Disease Law had been enacted. The deceased employee's illness was diagnosed by several doctors as pneumonoconiosis and was described by one of them as "caused by inhaling a foreign substance, dirt, particles, sand particles, coal particles" and as causing an irritative process which "causes * * * an infiltrated fibrosis of the lung." The decedent had been employed in sandblasting work. It was held that an instruction that his death was due to an occupational disease was properly given.

Finally, the very fact that in the instant case the Medical Board rejected a claim based upon pneumoconiosis because the Board did not find that the claimant had silicosis seems to confirm the view that silicosis is regarded as a form of pneumoconiosis.

If pneumoconiosis should be regarded as a pulmonary dust disease apart from silicosis, there were before the Commission diagnoses that the claimant did have this ailment, and

the basis of the Medical Board's finding adverse to his claim was that he did not have silicosis. In view of the inclusion of "silicosis, asbestosis or other pulmonary dust disease" in Section 22 (d) of Article 101 of the Code (1951), it would seem that the Commission would have had sufficient evidence to enable it to reverse the finding of the Board because of the existence of some form of pulmonary dust disease, pneumonoconiosis.

If, on the other hand, silicosis is to be regarded as comprised within the term "pneumoconiosis", as we think it properly may be, then we also think that there was some evidence before the Commission of the claimant's exposure to silica dust in the defendant company's mine which would enable the Commission to reach a conclusion opposite to that of the Medical Board. *Bethlehem-Sparrows Point Shipyard, Inc. v. Bishop, supra; Consolidation Coal Co. v. Porter,* 192 Md. 494, 64 A. 2d 715. That is the question before us, not whether we agree with the Commission's view of the evidence.

Accordingly, the order of the Circuit Court affirming the award made by the Commission must be affirmed.

*Order affirmed, with costs.*